THE STATE, DEFENDANT IN ERROR, v. MORRIS RUDNER, PLAINTIFF IN ERROR.

Argued February 19, 1918—Decided July 9, 1918.

1. The crime declared in section 164 of the Crimes act (*Comp. Stat.*, p. 1794), namely, that any person who shall, without permission, tamper with the meter of any water company, with intent to defraud, shall be guilty of a misdemeanor, is complete when the work of tampering has been finished, and the offence is outlawed two years thereafter.

2. Where the defendant is charged, in different counts of the same indictment, with the commission of an ordinary misdemeanor, and the jury convicts him of the lesser offence, the verdict is a specific one and does not operate to convict the defendant on the counts charging the greater offence.

On error to Mercer Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff in error, *Aaron V. Dawes.* With him on the brief, *John A. Montgomery.*

For the state, *Martin P. Devlin,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The indictment in the present case contained four counts. The averment of the first count was that Rudner, the plaintiff in error, together with one Charles H. Speck, did unlawfully tamper with a water meter which had been installed by the water department of the city of Trenton in the premises of Rudner, for the purpose of measuring and registering the amount of water used therein; and that this was done with the intent to defraud the municipality by causing the meter to register much less than the actual flow of water through it.

The second count charged Rudner unlawfully aided, assisted and abetted Speck in tampering with this meter, for the purpose of causing it to register much less than the actual flow of the water through it.

The third and fourth counts charged the defendants, Rudner and Speck, with unlawfully and feloniously stealing, taking and carrying away six hundred and forty thousand four hundred cubic feet of stored filtered water of the value of $576.36 of the goods and chattels of the city of Trenton.

The trial of the indictment proceeded against Rudner alone, and the jury returned the following verdict against him: "The said Morris Rudner is guilty of the misdemeanor aforesaid of him above charged in the form aforesaid, and as by the indictment aforesaid is above supposed against him."

Rudner thereupon sued out the present writ of error to review the judgment entered upon that verdict.

The first assignment of error challenges the refusal of the trial court to direct a verdict in favor of the plaintiff in error on the first and second counts of the indictment upon the ground that the offence alleged in each of these counts, if committed at all, had been committed more than two years before the finding of the indictment, and was therefore outlawed. The motion to direct was based ·upon section 152 of our Criminal Procedure act (*Comp. Stat., p.* 1870) which declares that no person shall be prosecuted, tried or punished for any offence not punishable with death unless the indictment shall be found within two years from the time of committing the offence.

The record shows that the indictment was presented at the January term, A. D. 1917. The proof on the part of the state was that the illegal tampering with the water meter installed in Rudner's premises occurred some time during the year 1914; and there was no evidence that it occurred at any subsequent date. The question, therefore, whether the refusal of the motion to direct a verdict upon the first and second counts of the indictment was proper, or not, depends upon the true construction of the statutory provision upon which these two counts were based. That provision is contained in section 164 of our Crimes act (*Comp. Stat., p.* 1794), and,₁so far as pertinent to the present case, is as follows: "Any person who shall, without permission * * * connect or disconnect the meters * * * of any water company, or in any other manner, without such permission, tamper or interfere with such meters * * * for the purpose of obtaining * * * water with intent to defraud such company, shall be guilty of a misdemeanor." The contention on the part of the plaintiff in error is that the crime declared in the statute is a specific one, and becomes complete when the work of tampering or interfering with the meter is entirely finished; while on the other hand it is argued by the state that the crime is not complete unless the purpose which was sought to be accomplished by the tampering with the meter has, in fact, been consummated; that is, unless water has been actually abstracted in .excess of the quantity

registered; and that, therefore, so long as the water continues to be unlawfully abstracted, the crime remains a continuing one. It is conceded that the abstraction of the water was persisted in until a period well within the two years' limitation, and, so, we are called upon to determine the soundness of the one contention or the other.

A careful reading of the statute leads us to the conclusion that the purpose of the legislature as expressed therein is so plain as not to call for judicial interpretation. It declares that any person who shall without permission tamper or interfere with the meter of any water company, for the purpose of fraudulently obtaining water from such company, shall be guilty of a misdemeanor. There is nothing in the statute to suggest the idea that a person who has been guilty of such tampering, and whose intent was to defraud the water company, should escape punishment if his intent is prevented from being carried into execution by a prompt discovery of what he has done, or in any other way. The object of the legislature was, not the punishment of one who feloniously abstracts water which is the property of one of these companies—for that crime, like any other felonious taking, is dealt with in other provisions of the statute—but the protection of these companies against the fraudulent abstraction of water by methods so insidious and secret as not to be readily discoverable. And in order to effect that object the legislature created an entirely separate and distinct offence which it made punishable without regard to whether the larcenous purpose which led to the tampering with the meter was accomplished or not.

We have not overlooked the contention of counsel for the state that the situation here presented is quite similar, in its legal essence, to the criminal offence of obtaining moneys by false pretences; and that the decisions upon that branch of the law should control us in the present case. We fail, however, to perceive the similarity. The wrong which is made criminal by the statute in the class of cases appealed to is not the making of the false pretence, but the wrongful obtain-

ing of money by reason thereof. *State* v. *Crowley,* 39 *N. J. L.* 264.

Determining, as we do, that the crime struck at by the one hundred and sixty-fourth section is complete when the work of tampering with the meter has been finished, we conclude that the motion to direct a verdict of acquittal on the first and second counts should have been granted, and that its refusal was error.

It is insisted on behalf of the state that this error should not result in a reversal of the conviction, for the reason that the verdict returned by the jury was a general one; and it is said to be the settled law of this state that where there are several counts in an indictment, each charging a distinct crime, a general verdict of guilty amounts to a conviction of each separate offence, and even if the verdict cannot be supported as to one or more of the crimes charged, it will be upheld as to the offence described in a single good count. That this is the law of the state is not disputed. It was so declared by the Court of Errors and Appeals in the case of *State* v. *Huggins,* 84 *N. J. L.* 254. And so, if each of the several counts in the present indictment had charged a simple misdemeanor, the verdict rendered by the jury "guilty of the misdemeanor aforesaid," &c., would include all the counts, and the rule in the Huggins case would be applicable. Upon examination, however, the contrary is clearly shown to be the fact. The first count charges a violation of the one hundred and sixty-fourth section, and that section makes a person who shall be convicted under it "guilty of a misdemeanor." The second count, in its legal effect, charges the same offence. It charges Rudner with aiding and abetting Speck in his tampering with the meter; and since the decision of *Engeman* v. *State,* 54 *Id.* 247, it has been considered to be settled that in misdemeanors all who aid, abet or participate, are principals, and all equally guilty. *State* v. *Hess,* 65 *Id.* 544; *State* v. *Wilson,* 80 *Id.* 467; *State* v. *Spence,* 81 *Id.* 265. The third and fourth counts, however, each of them, charge the plaintiff in error with the crime of grand larceny, and this crime, by the one hundred and fifty-

eighth section of the Crimes act (*Comp. Stat., p.* 1793), is made a high misdemeanor. The great difference between the two grades of criminality is demonstrated by the punishment which each carries with it. A misdemeanor is punished by a fine not exceeding $1,000, or by imprisonment not exceeding three years, or both, while a high misdemeanor is punishable by a fine not exceeding $2,000, and by imprisonment not exceeding seven years, or both. See *Crimes act, Comp. Stat., p.* 1812, §§ 217, 218.

The verdict in the present case therefore is a specific and not a general one. It has declared the plaintiff in error to be guilty of the misdemeanor charged in the indictment, that is, of the crime set out in the first and second counts of that pleading, and carries with it a liability to the punishment declared against misdemeanors by the statute, viz., a fine, not exceeding $1,000, and imprisonment not exceeding three years, either or both. To transmute the finding of the jury into a declaration that plaintiff in error was guilty of the high misdemeanor charged in the indictment, would be to impose upon him a liability to a fine not exceeding $2,000, and to imprisonment not exceeding seven years. The rule in the Huggins case, as we read the opinion, was not intended to, and does not, produce so unfortunate a result.

Looking at the whole case, therefore, the situation disclosed is this: The plaintiff in error having been charged in the same indictment with the commission of an ordinary misdemeanor, and also with the commission of a high misdemeanor, the jury convicted him of the lesser offence. That offence was outlawed at the time the indictment was presented, and, consequently, the verdict is without force. The jury, although the question was submitted to it, failed to pass upon his guilt or innocence of the crime charged in the third and fourth counts of the indictment. In this situation the trial court was without legal power to pass sentence upon the plaintiff in error, and, consequently, the judgment under review must be reversed.