STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. RAYMOND DIXON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 16, 1987—Decided October 15, 1987.

Before Judges FURMAN, LONG and SCALERA.

*George J. Otlowski, Jr.,* attorney for appellant (*John C. Scannell,* on the brief).

*W. Cary Edwards,* Attorney General, attorney for respondent, (*Robin Parker,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

SCALERA, J.A.D.

Defendant was tried to a jury and convicted of theft of electrical power services, contrary to *N.J.S.A.* 2C:20–8(a), for which he was sentenced to a term of probation for five years, required to pay a fine of $2,500, ordered to make restitution of $14,284.61, and was assessed a $25 penalty payable to the Violent Crimes Compensation Board and court costs of $20. He appeals from that conviction contending that the trial judge erred when he included in his charge to the jury the statutory presumption contained in paragraph c of that statute and further, that the State had failed to sustain its burden of proof against him. We disagree and affirm.

In August of 1984, defendant contacted Jersey Central Power and Light (JCP & L) because his home in Manalapan, New Jersey was experiencing a partial loss of electrical power. A JCP & L employee, Fred Black, came to repair the problem and found that an electrical connection at a nearby utility pole had burned out. After rectifying this problem, Black returned to defendant's premises to reset the meter on the side of the house. While doing so he noticed that "there were things operating in the house, but the meter wasn't turning." Accordingly, in defendant's presence, he replaced the meter with a new one and retained the malfunctioning one. In September 1984, defendant's wife placed a call complaining of an excessive electricity bill. JCP & L sent Joseph Bonfiglio, a meter tester, to investigate the complaint. He found the meter to be in proper working order but noticed signs that "somebody had been pulling the meter out of the panel and tampering with it." The nickle plated prongs on the meter had been worn down to the copper which could only occur as a result of the meter being repeatedly removed. The meter itself was burned by electrical arcing, further indicating tampering. Since there was no reason for anyone other than a JCP & L employee to remove a meter Bonfiglio filled out an investigation order.

As a result, Douglas Wasser, an investigator for JCP & L, obtained defendant's past electrical billing records. He determined that Dixon's electrical consumption from 1975 to 1979 had been at a high level and that from 1979 to August 1984, before the new meter had been installed, electrical consumption had been relatively low. Wasser then had the meter that had been removed from Dixon's house sent to a meter-testing facility where it was examined by Lawrence Casterline, the supervisor of the JCP & L testing facility. There it was discovered that one of the two wires in the meter which registers electrical use had been cut and poked through a vent hole in the back of the meter. Casterline noted that the end of the severed wire was stripped bare and grounded against another part of the meter so as to cause the meter to register only a maximum of 50% of the actual electrical use. He further indicated that only tampering could have caused such a condition. It was estimated that defendant had thereby illegally obtained $14,284.61 in electrical power from JCP & L between 1979 and August 1984.

Defendant testified that he lived in the house in question since 1979 with his wife and four children. However, he categorically denied that he had tampered with any electric meter.

Defendant contends that the trial judge committed reversible error by instructing "the jury that if they found the existence of any type of tampering with respect to the defendant's meter, then they could apply one of the presumptions found in *N.J.S. A.* 2C:20–8." He argues that since the presumptions are only found in *N.J.S.A.* 2C:20–8(c) and (d), which are intended specifically to punish meter tampering (a disorderly persons offense) they should not apply to subsections (a) and (b) which seek to proscribe the theft of electrical services (a crime of the fourth, third or second degree). Defendant does not complain of the precise manner in which the trial judge charged that the jury could draw an inference based on the statutory presumption.

In the instant case, the indictment charged defendant with "purposely obtaining services from Jersey Central Power and Light Company which he knew were available only for compensation, by deception, tampering or other means, ... having a value in excess of $500.00, contrary to the provisions of *N.J.S. A.* 2C:20-8...." Thus he was on notice that the State would seek a conviction of the theft of electric power valued over $500 based on his "deception, tampering, or other means."

At the time in question the applicable portions of *N.J.S.A.* 2C:20-8 provided:[1]

### Theft of services

a.   A person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, or by false token, slug, or other means, including but not limited to mechanical or electronic devices or through fraudulent statements, to avoid payment for the service. "Services" include labor, professional service, transportation, telephone, or other public service, accommodation in hotels, restaurants or elsewhere, entertainment, admission to exhibitions, use of vehicles or other movable property. Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, absconding without payment or offer to pay gives rise to a *presumption* that the service was obtained by deception as to intention to pay.

b.   A person commits theft if, having control over the disposition of services of another, to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

c.   Any person who, without permission and for the purpose of obtaining electric current, gas or water with intent to defraud any vendor of electricity, gas or water:

  1.   Connects or causes to be connected by wire or any other device with the wires, cables or conductors of any such vendor; or

  2.   Connects or disconnects the meters, pipes or conduits of such vendor or in any other manner tampers or interferes with such meters, pipes or conduits, or connects with such meters, pipes or conduits by pipes, conduits or other instruments—is guilty of a disorderly persons offense.

  The existence of any of the conditions with reference to meters, pipes, conduits or attachments, described *in this section,* is *presumptive evidence* that the person to whom gas, electricity or water is at the time being furnished by or through such meters, pipes, conduits or attachments has, with intent to

---

[1]The statute was amended to specifically include thefts of cable television services and tampering with such equipment. L.1983, c. 15, § 1.

defraud, created or caused to be created with reference to such meters, pipes, conduits, or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so furnished with gas, electricity or water for less than 31 days or until there has been at least one meter reading.

(d) Any person who, without permission or authority, connects or causes to be connected by wires or other devices, any meter erected or set up for the purpose of registering or recording the amount of electric current supplied to any customer by any vendor of electricity within this State, or changes or shunts the wiring leading to or from any such meter, or by any device, appliance or means whatsoever tampers with any such meter so that the meter will not measure or record the full amount of electric current supplied to such customer, is guilty of a disorderly persons offense.

The existence of any of the conditions with reference to meters or attachments described *in this subsection or in subsection c.* is *presumptive evidence* that the person to whom electricity is at the time being furnished by or through such meters or attachments has, with intent to defraud, created or caused to be created with reference to such meters or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so furnished with electricity for less than 31 days or until there has been at least one meter reading. [Emphasis added]

Resort to the available history of this portion' of the Code reveals that the Criminal Law Revision Commission sought to consolidate under chapter 20 a number of so-called property crimes that had been separately treated in a large number of statutes under Title 2A, including *N.J.S.A.* 2A:111–1, obtaining money, property, etc., by false pretense and *N.J.S.A.* 2A:170–63 and 64, covering fraudulent tapping and tampering with electric, water or gas meters. II *Final Report of the New Jersey Criminal Law Revision Commission: Commentary,* pages 216–220 (1971). With respect to the category described as, "Theft of Services," the Commission proposed only what eventually were passed as paragraphs a. and b. of *N.J.S.A.* 2C:20–8. I *Final Report of The New Jersey Criminal Law Revision Commission:* Report and Penal Code (1971). Before passage, however, the Legislature specifically appended to this statute as paragraphs c. and d., what had previously been treated in *N.J.S.A.* 2A:170–63 and 64 as disorderly persons offenses. *State v. Insabella,* 190 *N.J.Super.* 544, 548 (App.Div.1983). Those statutes were independent of one another under Title 2A and each included the statutory presumption here in issue as a

result of a legislative amendment in 1938. *State v. Curtis*, 148 *N.J.Super.* 235, 240–241 (App.Div.1977), certif. den., 75 *N.J.* 22. The validity of these specific presumptions has been upheld as constitutionally valid and is not attacked here. *State v. Curtis, supra.*

There is no question that subsections (a) and (b) are offenses quite distinct from subsections (c) and (d), as we noted in *State v. Insabella,*

> *N.J.S.A.* 2C:20–8 contains four separate offenses under the heading "Theft of Services." Subsections a and b describe theft of services and misappropriation of services and both are described as "theft." The receiving or diversion must accrue to the benefit of the actor or another, *i.e.*, a benefit must be obtained. The degree of these thefts is to be graded by the dollar amount of the services stolen. *N.J.S.A.* 2C:20–2(b). Quite distinctly, subsections (c) and (d) are not described as thefts but only as disorderly persons offenses. Their sentencing scheme is not determined by *N.J.S.A.* 2C:20–2(b) but by Chapters 43 through 46. No benefit need be obtained by the actor. It is apparent that the purpose of dividing the statutes into sections governing the wrongful conduct is the same as that of *State v. Rudner* [92 *N.J.L.* 20 (Sup.Ct.1918)]: to protect the utility providers from insidious tampering as well as from the theft of its services. While one can be prosecuted by two different statutes, they are not interchangeable. [190 *N.J.Super.* at 548–549]

■ Defendant here was found guilty of violating *N.J.S.A.* 2C:20–8a because he had purposely obtained electric power services from JCP & L without paying the necessary compensation. That part of the statute by its terms, prohibits the theft of services from virtually any source. In contrast, paragraph c. deals specifically with tampering with "meters, pipes or conduits" to obtain "electric current, gas or water" with the intent to defraud the vendor of such service. Paragraph c. further provides that "[t]he existence of any of the conditions with reference to meter, pipes and conduits or attachments, described in this *section,* is presumptive evidence that the person to whom gas, electricity or water is at the time being furnished ... created or caused ... the condition so existing." (emphasis added). In *State v. Curtis, supra,* we noted that this statutory presumption was based on a similar provision contained in the New York Penal Code and "was adopted by the Legislature because of the practical impossibility of proving by direct

evidence the actual participation of the consumer in the illegal activity." However, we also took care to point out,

> ... that the statutory terminology of "presumptive evidence" merely has the effect of permitting an inference to be drawn from the established facts that another fact exists without the necessity of proof of the inferred fact. It does not mandate guilt. Nor does it obviate the fundamental burden of the State to prove the elements of the offense beyond a reasonable doubt. [148 *N.J.Super.* at 240–241]

Our task here is to decide whether the otherwise unexplained and inartful appendage of sections 63 and 64 of the previous Disorderly Persons Act to the Law Revision Commission's proposed section 20:8–20 of the Criminal Code of New Jersey evinces a legislative intent to make the statutory presumptions of the former applicable to all of the offenses described therein or to confine them as before to what are now paragraphs c. and d.

As noted, the defendant argues that since the presumption in question continues to be dealt with separately in paragraphs c. and d., it can only apply to the disorderly persons offenses contained therein. The State counters that, notwithstanding the physical location of the presumption language in paragraphs c. and d., since the statutory creation of the presumption was originally provided in recognition of the "practical impossibility" of proving that the consumer committed the offense, (*State v. Curtis, supra* at 240), its subsequent inclusion in the Code reflects a clear legislative intention to have it apply to any charge under *N.J.S.A.* 2C:20–8 where such tampering is demonstrated to have been a cause of the theft of services.

In construing these provisions we are mindful that, generally speaking, penal statutes are to be strictly construed. *State v. Hodge,* 95 *N.J.* 369, 374 (1984); *State v. Insabella, supra,* 190 *N.J.Super.* at 550. However, this principle is subject to another well-established principle that it is a court's responsibility "to give harmonizing construction to legislation and to read it so as to give effect to all of its provisions and to the legislators will." *State v. Channel Home Centers,* 199 *N.J.Super.* 483, 489

(App.Div.1985), certif. den., 93 *N.J.* 253. *See also State v. Green*, 62 *N.J.* 547, 554 (1973). *See also State v. Frost*, 95 *N.J.Super.* 1, 3 (App.Div.1967) ("Although, generally speaking, penal statutes are to be strictly construed, . . . the rule of strict construction does not mean that the manifestations of the Legislature's intention for criminal responsibility should be disregarded"). In other words, "[p]ortions of a statute should not be viewed in isolation, but rather in relation to the whole and each part should be so interpreted as to harmonize with the others." 1 *Wharton's Criminal Law*, § 12, p. 61 (14th ed. 1987). Thus, "[w]here a choice must be made between two imperfect interpretations, the view should be selected which more likely accords with the probable legislative intent." *County of Monmouth v. Wissell*, 68 *N.J.* 35, 43 (1975). Indeed, a court may even delete or disregard statutory language when justifiable to fulfill the ascertained legislative intent. *Id.* at 44.

So guided, we are persuaded here that it was clearly the legislative intent to apply the statutory presumptions whenever a person was prosecuted for theft of services under *N.J.S.A.* 2C:20–8 and the requisite evidence of meter tampering produced to trigger its application, as occurred in this case. Our perception is that the legislature determined to comprehensively deal in *N.J.S.A.* 2C:20–8 with the problems of theft and tampering with equipment relating to services supplied by public utilities, whether occasioned through meter tampering or otherwise. *State v. Kohler*, 40 *N.J.Super.* 600, 605–608 (App. Div.1956), certif. den., 22 *N.J.* 225. We think it unlikely that the Legislature, had it been faced with the precise argument advanced here by defendant, would have chosen to have the statutory presumption limited to minor prosecutions involving only disorderly persons offenses.

Our reading of the statute is further buttressed by the fact that the prior Title 2A versions of subsections (c) and (d) both employed the phrase, "described in this section" when referring to the applicability of the statutory presumption. *See N.J.S.A.*

2A:170–63 (repealed in 1979, now subsection (c)); 2A:170–64 (repealed in 1979, now subsection (d)). However, when these two sections were transferred into the Code and became subsections of *N.J.S.A.* 2C:20–8, only the language in subsection (d) was changed. In particular, the language "in this section" was changed to "in this subsection or in subsection (c)." Thus, it may be argued that the Legislature was conscious and aware of the fact that its use of the word, "subsection" referred to the individual paragraphs of the statute and the word, "section" referred to the entire statute in question.[2]

In sum, we agree with the State's argument that it strains a commonsense reading of the statute to conclude

> ... that where a defendant has tampered with a utility meter without the motive for personal gain (and is therefore liable under subsection (c) for a disorderly persons offense) the presumption is applicable; but where as in this case, a defendant has tampered with a utility meter for personal gain (and is therefore liable under subsection (a) for up to a second degree crime) the presumption is inapplicable. That result would be incongruous.

■ Defendant's other claims that the verdict was against the weight of evidence and that "but for the presumption, the State has failed to meet its burden of proof" are clearly without merit, especially in light of our previous discussion. *R.* 2:11–3(e)(1)(A) and (E). The State's evidence in this case amply demonstrated that the electrical meter on the side of a house in Manalapan, New Jersey had been tampered with; that defendant lived in that house and that the JCP & L account for electricity to that house was opened in defendant's name. Viewed in a light most favorable to the State, a reasonable jury could have clearly concluded that the electrical meter attached to the house was tampered with and that it was defendant who thereby illegally obtained electricity from JCP & L. *State v. Brown,* 80 *N.J.* 587, 591 (1979).

Affirmed.

---

[2]However, we take note of the most recent amendments providing for the continuing nature of such offenses, wherein the word, "section" is again used loosely in referring to paragraphs c. and d. L.1985, c. 10, § 1.