STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
RAYMOND DIXON, DEFENDANT–APPELLANT.

Argued September 27, 1988—Decided January 24, 1989.

*George J. Otlowski* argued the cause for appellant (*George J. Otlowski*, attorney; *John C. Scannell*, on the brief).

*Robin Parker*, Deputy Attorney General, argued the cause for respondent (*Cary Edwards*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This is a difficult case that occasions little sympathy for the defendant-homeowner's position. But the issues transcend the circumstances of this defendant. The question presented is whether the presumption of owner responsibility that attends the disorderly persons offenses of utility-tampering under *N.J. S.A.* 2C:20-8(c) and –8(d) extends to the more serious crimes of theft of the utility's services under *N.J.S.A.* 2C:20-8(a) and –8(b).[1] Though the interpretation offers the attraction of symmetry, it would be inconsistent with the graduated structure of the Code, conflict with the language of the statute itself, and offend our usual rules of statutory construction. Accordingly, we reverse the judgment below, which erroneously extended the presumption to the more serious criminal offense of theft of electrical service under *N.J.S.A.* 2C:20-8(a) and –8(b).

I

The New Jersey Code of Criminal Justice (Code), *N.J. S.A.* 2C:1-1 to 98-4, represents a "clean break with the past," *State v. Butler*, 89 *N.J.* 220, 226 (1982), in its attempt to create a coherent and internally consistent structure of criminal of-

---

[1]The text of *N.J.S.A.* 2C:20-8, as it read at the time of the offense, is set forth in Appendix A. Later amendments to the statute are not relevant in the present case.

fenses. The Code seeks generally to consolidate conceptually similar offenses previously found scattered throughout our prior criminal statutes. *See State v. Talley*, 94 *N.J.* 385 (1983). Our discussions in *State v. Lee*, 96 *N.J.* 156 (1984), and *State v. Harmon*, 104 *N.J.* 189 (1986), explain how the Code has carefully graded offenses on the basis of the degree of an actor's moral culpability—the state of the actor's mind.

It is the existence of the criminal purpose that explains why violations attended by a specific intent to commit a wrong are more serious offenses under the Code. *State v. Lee, supra*, 96 *N.J.* at 161. Thus, in *State v. Lee* we recognized that the Legislature might choose to attach culpability to the possession of certain objects under inappropriate circumstances even without any evidence of a criminal purpose (a fourth-degree offense). The mental-state provisions of the Code present a sensible structure and one that comports with our understanding of criminal responsibility. The lesser the grading of the offense, the less culpable need be the mental state of the actor.

A *presumption* that an actor has committed a wrong with the required criminal intent represents a legislative judgment of probable realities, balancing the quality of the actor's culpability with the gravity of the sanction to be imposed. For example, the complex grid of possessory offenses of weapons that the Legislature has created under *N.J.S.A.* 2C:39–1 to –15 reflects this balance of culpability with gravity. *See .State v. Lee, supra*, 96 *N.J.* at 160–164. There is a common-sense appreciation that most people who have a license for a gun will produce it when asked. Hence, it is not unfair to suggest to the jury that in evaluating the third-degree offense of possessing an unlicensed weapon, it may infer from the nonproduction of the license that the gun is in fact unlicensed. *State v. Ingram*, 98 *N.J.* 489 (1985). But a jury may not infer that an unlawful purpose arises from that circumstance.

An example or two from the "Receiving stolen property" provision of the Code, *N.J.S.A.* 2C:20–7, suggests the balance that the Legislature makes between the actor's mental state and the degree of offense. Mere possession of stolen goods is not sufficient to constitute the offense unless the State can prove the defendant took possession either knowing the goods were stolen or believing they were probably stolen. *See N.J.S. A.* 2C:20–7(a). However, the Code sensibly allows a presumption of knowledge if a person either received other stolen goods within the previous year or currently has possession of more than one item stolen on separate occasions. *N.J.S.A.* 2C:20–7(b).[2] While it is possible that a person may buy or be given property without knowing that it is stolen, the chances of such behavior occurring without culpable intent surely decrease as the number of incidents increases.

The Legislature's structure of the theft offense in this case suggests the same considerations. Taken together, the provisions of *N.J.S.A.* 2C:20–8(a) and –8(b) represent an effort by the Code's drafters and the Legislature to deal with the reality that wealth today takes the form of both "property" and "services." Under prior false-pretenses-criminality statutes and case law, the object of the crime was limited to theft of property, leaving many forms of wealth unprotected. II Commentary: Final Report of the New Jersey Criminal Law Revision Comm'n 235 (1971). Hence, the Code's drafters proposed a generic crime of theft of services, and defined services, as 2C:20–8(a) now does, to include "labor, professional service, transportation, telephone, or other public service, accommodation in hotels, restaurants * * *" and so forth. This theft-of-services offense in turn was to be graded, like all other theft offenses, according to

---

[2]The Code also allows a presumption of knowledge for persons in the business of selling such property who fail to make reasonable inquiry into the seller's right to possess and dispose of the goods. *N.J.S.A.* 2C:20–7(b)(3).

the amount stolen.[3]  *N.J.S.A.* 2C:20–2.  Thus one who stole $75,000 or more worth of computer services would be guilty of a second-degree crime, *N.J.S.A.* 2C:20–2(b)(1), but one who stole less than $75,000 but more than $500 would be guilty of a third-degree crime.  *N.J.S.A.* 2C:20–2(b)(2).  One who stole less than $500, but at least $200, would be guilty of a fourth-degree offense, and one who stole less than $200 would be guilty of a disorderly persons offense.  *N.J.S.A.* 2C:20–2(b)(3).  As originally proposed then, the Code would have created no separate offense of utility-tampering.  (We use the expression utility-tampering to refer as well to meter-tampering, splicing, shunting and other devices to steal utility services.)  It contained only the two theft provisions covering purposeful acquisition with intent to avoid payment (now 2C:20–8(a)) and diversion of services (now 2C:20–8(b)).

Like so many other provisions of the Code, these went through a legislative evolution before final passage.  Specifically, the Legislature tacked on the pre-Code utility-tampering offenses.  *N.J.S.A.* 2A:170–63.  *See* Appendix A for comparison of the Commission's recommendations and the pre-Code offense of utility-tampering.  Unlike the theft offenses, the disorderly-persons offenses that were appended to the theft-of-services provisions of the Code of Criminal Justice have no gradation.  *N.J.S.A.* 2C:20–8(c) and –8(d).  The offenses deal with the condition of the metering device, or other physical apparatus of the utility.  The legislative presumption in these provisions allows the fact-finder to infer that if the meter was tampered with, it was most probably the customer who did the tampering and thus had the covert purpose.

By its language and history then, the presumption that the customer has "created" the tampered condition is limited to the disorderly-persons offenses of connecting with the utility's

---

[3]The offenses are also graded according to other factors not relevant in the present case.  *See N.J.S.A.* 2C:20–2.

wires or cables, 2C:20–8(c)(1), disconnecting or tampering with the utility's meters or instrumentation, 2C:20–8(c)(2), or setting up one's own meter or shunting the service away from the meter, 2C:20–8(d).[4]  Applying the presumption only to the lesser offenses is also consistent with the rest of the Code's approach of balancing the degree of criminal culpability with the gravity of the sanction imposed.

Our dissenting member argues that the logic of the situation suggests that the presumption ought to apply as well to the higher degree theft crimes.  After all, most homeowners do not alter meters for benign purposes.  We would not doubt his logic, but it should first find its way into the language of the statute.

The State argues that because 2C:20–8(c) states that "[t]he existence of any of the conditions with reference to meters, pipes, conduits or attachments, *described in this section,* is presumptive evidence" of customer tampering (emphasis added), the use of the word "section" was meant to refer to all of 2C:20–8, the theft offenses as well as the disorderly-persons offenses.  The State deduces this from the fact that the Legislature made some slight amendments in the predecessor disorderly-persons law, *N.J.S.A.* 2A:170–6 (repealed 1979), changing the reference to "subsection" in carrying it over into 2C:20–8(d).  The State suggests that the Legislature obviously intended that the term "subsection" refer to the particular subsection, (a), (b), (c), or (d), and "section" refer to the entire statute, and therefore concludes that the presumption described in *N.J.S.A.* 2C:20–8(c) clearly applies to all theft offenses of *N.J.S.A.* 2C:20–8.  We are not as certain that the Legislature had such a nuance in mind.

Finally, basic principles of determining legislative intent counsel against recognizing a criminal presumption that the

---

[4]These descriptions of the disorderly persons provisions are intended to be only examples and not all-inclusive of the scope of the offense.

Legislature has not clearly intended to create. If the presumption were applied to the theft offenses, 2C:20–8(a) and –8(b), then an entirely innocent customer, such as a dry cleaner whose lines have been tapped by another causing a loss of the utility's services in excess of $75,000, would be presumed guilty of a second-degree theft offense carrying a presumption of a five to ten year prison sentence. *N.J.S.A.* 2C:43–6(a)(2). We do not believe that the Legislature intended such a result.

"The [Supreme] Court has often stated that when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States*, 483 *U.S.* 350, 359–360, 107 *S.Ct.* 2875, 2881, 97 *L.Ed.*2d 292, 302 (1987). This is but another way of saying that statutes rendering behavior criminal and fixing the applicable penalties must do so in terms that cannot arguably be misunderstood and must be construed "so as to avoid the unfairness of arbitrary enforcement." *State v. Maguire*, 84 *N.J.* 508, 514 n. 6 (1980). Like the United States Supreme Court, "we adhere to the time-honored interpretive guideline that uncertainty concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Kozminski*, 487 *U.S.* ——, 108 *S.Ct.* 2751, 101 *L.Ed.*2d 788, 810 (1988) (citation omitted); *see also State v. Valentin*, 105 *N.J.* 14, 18 (1987) ("Penal laws cannot be extended by implication or intendment. Where more than one reasonable interpretation may be made, or where the language is ambiguous * * * the construction must be drawn against the state." (citation omitted)).

Because at the very least the statute can arguably be misunderstood (notice how the majority and the dissent disagree on the meaning of the statute), it must be construed to avoid the unfairness of selective or arbitrary enforcement and to maintain the proper balance between Legislature, prosecutor and courts in the trial of criminal cases. In short, we should not be the ones to remold the statute when there is doubt about its application.

## II

■ Having determined that the statutory presumption does not extend to the more serious theft offenses under 2C:20–8(a) and –8(b), we must ask whether the jury charge in this case, which allowed the jury to make the illicit presumption, was prejudicial error. To resolve that question, we must consider briefly the facts of this case.

For purposes of this appeal we shall accept the statement of facts in the State's brief. In August of 1984, the defendant experienced a partial loss of electrical service to his home and called the Jersey Central Power and Light Company (JCP & L) to repair the power outage. JCP & L linemen discovered the source of the outage and made the necessary repairs, but in the course of checking out his work a lineman noticed that defendant's electric meter was not working. He therefore removed the meter and replaced it with a new one, taking the malfunctioning meter back to JCP & L.

The following month, the defendant's wife, whose actions suggest that she was not part of any scheme, complained to the utility about the high electricity bill she had received. A meter tester from JCP & L found that the new electrical meter installed on August 27th was correctly calibrated but that the meter showed signs of having been tampered with, including evidence that the meter had been pulled out and replaced several times.

Further investigation disclosed that defendant had opened the original account with JCP & L in 1969, but that his average electrical use had increased substantially since the new meter was installed in August of 1984. In particular, the investigator noticed that from 1979 to August 1984 recorded consumption had been very low. The utility then checked the previously-removed meter. It was disassembled and it showed evidence of someone having tampered with it. Wires within the meter had been severed so that the meter would falsely measure a maximum of fifty percent of the electricity actually used. The

technique used led the investigator to conclude that only tampering and not malfunction could have produced that result. After comparing the earlier and later consumption figures, the utility concluded that defendant had stolen over $14,000 in electrical power over a five-year period. At trial, defendant denied tampering with the meter, contending that the first meter may have been altered by his son-in-law without defendant's knowledge or that the meter merely appeared to have been altered as a result of being dropped by the repairman.

Over the objection of the defendant, the trial court instructed the jury that if it found the existence of any type of tampering with respect to the defendant's electrical meter, then it could apply one of the presumptions found in *N.J.S.A.* 2C:20-8. As noted, these presumptions allowed the jury to find that the existence of the condition of tampering is sufficient to find that the defendant created or caused the condition with the intent to defraud the utility. The jury convicted defendant of theft of services. He was sentenced to five years probation and ordered to pay a $2500.00 fine, $14,284.61 restitution and $20.00 court costs. The trial court also imposed a $25.00 penalty payable to the Violent Crimes Compensation Board. On appeal, the Appellate Division ruled that "it was clearly the legislative intent to apply the statutory presumptions whenever a person was prosecuted for theft of services under *N.J.S.A.* 2C:20-8 and the requisite evidence of meter tampering produced to trigger its application, as occurred in this case." 220 *N.J.Super.* 550, 558 (1987). We granted certification, 110 *N.J.* 158 (1988), to review that judgment.

Since we have concluded that the presumption of criminal intent does not extend to the more serious theft offenses, we must only inquire whether the error in the charge had the capacity to affect the jury's verdict. On defendant's motion for new trial, the trial court concluded that even if you "take away the presumption and ask the question whether or not there was sufficient evidence from which the defendant could be found guilty beyond a reasonable doubt, * * * I conclude that there

was." The court then ruled that the verdict should not be set aside.

We have no doubt that correctly charged, the jury could well conclude, quite aside from the presumption, that the defendant had knowingly committed theft of the utility services. The evidence was overwhelming that it took a high degree of sophistication to bring about the condition of this meter. Given the panoply of circumstances, the jury could well infer that it was the defendant who had created the condition for the purpose of causing the theft of services. But the question is not whether the proofs were adequate to find the defendant guilty beyond a reasonable doubt. Rather, the question is whether the error in the charge had the capacity to affect the jury. "We have always placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury." *State v. Grunow*, 102 *N.J.* 133, 148 (1986); *see State v. Collier*, 90 *N.J.* 117 (1982); *State v. Simon*, 79 *N.J.* 191 (1979). This defendant, no less than the least suspect of homeowners, is entitled to be tried in accordance with correct principles of law. Hence, we are unable to conclude that the incorrect charge with respect to the presumption did not have the capacity to affect the jury's verdict.

We reverse the judgment of the Appellate Division and remand the case to the Law Division for further proceedings in accordance with this opinion.

APPENDIX A

COMMISSION'S PROPOSED CODE
(theft offense/no presumption)

SECTION 2C:20-8. THEFT OF SERVICES.

a. A person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, or by false token or other means to avoid payment for the service. "Services" include labor, professional service, transportation, telephone, or other public service, accommodation in hotels, restaurants or elsewhere, entertainment, admission to exhibitions, use of vehicles or other movable property. Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, absconding without payment or offer to pay gives rise to a presumption that the service was obtained by deception as to intention to pay.

b. A person commits theft if, having control over the disposition of services of another, to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto. (emphasis added)

CODE OF CRIMINAL JUSTICE
–statute applicable–
–at time of offense–
(composite)

2C:20-8. Theft of services

a. A person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, or by false token, slug, or other means, including but not limited to mechanical or electronic devices or through fraudulent statements, to avoid payment for the service. "Services" include labor, professional service, transportation, telephone, or other public service, accommodation in hotels, restaurants or elsewhere, entertainment, admission to exhibitions, use of vehicles or other movable property. Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, absconding without payment or offer to pay gives rise to a presumption that the service was obtained by deception as to intention to pay.

b. A person commits theft if, having control over the disposition of services of another, to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

c. Any person who, without permission and for the purpose of obtaining electric current, gas or water with intent to defraud any vendor of electricity, gas or water:

(1) Connects or causes to be connected by wire or any other device with the wires, cables or conductors of any such vendor; or

(2) Connects or disconnects the meters, pipes or conduits of such vendor or in any other manner tampers or interferes with such meters, pipes or conduits, or connects with such meters, pipes or conduits by pipes, conduits or other instruments—is guilty of a disorderly persons offense.

The existence of any of the conditions with reference to meters, pipes, conduits or attachments, described in this section, is presumptive evidence that the person to whom gas, electricity or water is at the time being furnished by or through such meters, pipes, conduits or attachments has, with intent to defraud, created or caused to be created with reference to such meters, pipes, conduits or attachments, the condition so existing; provided, however, that the presumption shall

PRE-CODE STATUTE
(disorderly persons offense/presumption)

2A:170-63. Fraudulently tapping electric wires, or gas or water meters or pipes; presumptive evidence

Any person who, without permission and for the purpose of obtaining electric current, gas or water with intent to defraud any vendor of electricity, gas or water:

a. Connects or causes to be connected by wire or any other device with the wires, cables or conductors of any such vendor; or

b. Connects or disconnects the meters, pipes or conduits of such vendor or in any other manner tampers or interferes with such meters, pipes or conduits, or connects with such meters, pipes or conduits by pipes, conduits or other instruments—

Is a disorderly person.

The existence of any of the conditions with reference to meters, pipes conduits or attachments, described in this section, is presumptive evidence that the person to whom, gas, electricity or water is at the time being furnished by or through such meters, pipes, conduits or attachments has, with intent to defraud, created or caused to be created with reference to such meters, pipes, conduits or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so furnished with gas, electricity or water for less than 31 days or until there has been at least 1 meter reading. (emphasis added)

2A:170–64. Tampering or connecting with electric meters; presumptive evidence

Any person who, without permission or authority, connects or causess to be connected by wires or other devices, any meter erected or set up for the purpose of registering or recording the amount of electric current supplied to any customer by any vendor of electricity within this state, or changes or shunts the wiring leading to or from any such meter, or by any device, appliance or means whatsoever tampers with any such meter so that the meter will not measure or record the full amount of electric current supplied to such customer, is a disorderly person. (emphasis added)

The existence of any of the conditions with reference to meters or attachments described in this section is presumptive evidence that the person to whom electricity is at the time being furnished by or through such meters or attachments has, with intent to defraud, created or caused to be created with reference to such meters or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so furnished with electricity for less than 31 days or until there has been at least 1 meter reading.

not apply to any person so furnished with gas, electricity or water for less than 31 days or until there has been at least one meter reading.

d. Any person who, without permission or authority, connects or causes to be connected by wires or other devices, any meter erected or set up for the purpose of registering or recording the amount of electric current supplied to any customer by any vendor of electricity within this State, or changes or shunts the wiring leading to or from any such meter, or by any device, appliance or means whatsoever tampers with any such meter so that the meter will not measure or record the full amount of electric current supplied to such customer, is guilty of a disorderly persons offense.

The existence of any of the conditions with reference to meters or attachments described in this subsection or in subsection c. is presumptive evidence that the person to whom electricity is at the time being furnished by or through such meters or attachments has, with intent to defraud, created or caused to be created with reference to such meters or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so furnished with electricity for less than 31 days or until there has been at least one meter reading. (emphasis added)

HANDLER, J., dissenting.

In this case the Court reverses what appears to be a well-founded conviction for theft of electrical services from a utility caused by tampering with the utility's electric meter contrary to *N.J.S.A.* 2C:20-8a. The defendant is a homeowner and customer of the utility furnishing electrical services. The trial court instructed the jury that it could draw an inference that the defendant, the person with complete control over the meter and "the person to whom electricity is being furnished," was the person who tampered with the meter. Such an inference, statutorily described as "presumptive evidence," appears in *N.J.S.A.* 2C:20-8c and -8d, which proscribe the offenses of meter tampering "with the intent to defraud" the utility. The Court determines, however, that such an inference of meter-tampering is not available as proof of an alleged violation of *N.J.S.A.* 2C:20-8a, applicable to the crime of theft of electrical services from a utility. It therefore reverses the Appellate Division, which determined that such a charge was proper and affirmed defendant's conviction. *State v. Dixon,* 220 *N.J.Super.* 550 (1987). Substantially for the reasons fully expressed by Judge Scalera for the Appellate Division, I disagree with the Court's holding and dissent.

## I.

In this case, the defendant was charged with theft of services in violation of *N.J.S.A.* 2C:20–8a. This provides that

a person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, or by false token, slug or other means, *including* but not limited to *mechanical or electronic devices* or through fraudulent statements, to avoid payment for the service. (Emphasis added).

The indictment against defendant alleged that he committed theft of services under this statutory section "by deception, tampering, or other means." Thus, as charged by the indictment, meter tampering constitutes the means defendant is alleged to have used in order to obtain electrical services without payment.

Included as part of the theft-of-services statute are two other provisions delineating the lesser offenses of meter tampering. *N.J.S.A.* 2C:20–8c describes one of these offenses as follows:

Any person who, without permission and for purposes of obtaining electric current ... in any other manner tampers or interferes with ... meters ... is guilty of a disorderly persons offense.

It further states:

The existence of any of the conditions with reference to meters ... described in this section, is presumptive evidence that the person to whom ... electricity ... is being furnished by or through such meters ... has, with the intent to defraud, created or caused to be created with reference to such meters ... the conditions so existing[.] [*Ibid.*]

The offense of meter tampering is also defined as follows:

Any person who, without permission or authority ... by any ... means whatsoever tampers with any ... meter so that the meter will not measure or record the full amount of electric current supplied to such customer, is guilty of a disorderly persons offense. [*N.J.S.A.* 2C:20–8d.]

The statute also sets forth the presumption of responsibility for such meter tampering, *viz:*

The existence of any of the conditions with reference to meters or attachments described in this subsection or in subsection c. is presumptive evidence that the person to whom electricity is at the time being furnished by or through such meters or attachments has, with intent to defraud, created or caused to be created with reference to such meters or attachments, the condition so existing; provided, however, that the presumption shall not apply to any person so

furnished with electricity for less than 31 days or until there has been at least one meter reading. [*Ibid.*]

Thus the statute proscribes two disorderly persons offenses that involve meter tampering: one, 8c, prohibits a person who tampers with a meter in any manner without permission in order to obtain electricity; the other, 8d, prohibits a person who without permission tampers with a meter "by any means whatsoever" so that it does not measure or record the service furnished. The statute also provides an evidentiary presumption: if a meter has been tampered with in any manner or by any means so that it will not accurately measure or record the full amount of electricity furnished, it may be inferred that the customer to whom such electricity is furnished is the person who tampered with the meter.

It cannot be overemphasized that this evidentiary presumption is actually and simply an inference that is available to the jury in determining who may be responsible for meter tampering. The presumption is a form of evidence; it does not alter the elements of the underlying offense or shift the State's burden of proof. *See State v. Curtis*, 148 *N.J.Super.* 235, 240–41 (App.Div.), certif. den., 75 *N.J.* 22 (1977). Indeed, the trial court's charge concerning the presumption conformed to this understanding of its purpose and effect. It did not treat "tampering" as another substantive offense that the jury could consider interchangeably with theft of services. Thus, according to this instruction, the jury could, but was not required to, draw such an inference depending on all of the surrounding circumstances in light of the other evidence.

This understanding of the presumption's evidentiary purpose is fully expressed in *State v. Curtis, supra.* There defendant had been convicted of the disorderly persons offense of tampering with an electric meter, contrary to *N.J.S.A.* 2A:170–64, the statutory predecessor of *N.J.S.A.* 2C:20–8d. The defendant challenged the constitutionality of that part of the statute permitting "the existence of certain conditions relating to the electric meter and its wiring to constitute 'presumptive evi-

dence' that the person to whom the electricity is furnished has created or caused the creation of the prohibited act with intent to defraud." 148 *N.J.Super.* at 237. The language establishing the presumption in *N.J.S.A.* 2A:170–64 is almost identical to that contained in *N.J.S.A.* 2C:20–8c and d. The court concluded that the presumption contained therein was in fact constitutional, observing that "[t]he significant test of constitutionality under due process is whether the factual inference permitted by the statute can be said to be a rational one based upon human experience." 148 *N.J.Super.* at 238. The court reached the following conclusion regarding the presumption:

> In view of the preconditions to the application of the inference it is our conclusion with substantial assurance that it is more likely than not that the customer participated in the tampering resulting in the failure of the meter to record fully the current supplied to that customer, with the fraudulent intent of depriving the electric utility of the proper compensation for its services. Such an inference is rational when tested by human conduct and experience, for the only person who would usually be motivated to tamper with a meter is the one who would profit financially from such tampering. [*Id.* at 239–40.]

The question presented is whether the presumption of owner-customer responsibility for utility meter tampering, which is expressly applicable to the disorderly persons offenses of meter tampering with intent to defraud under *N.J.S.A.* 2C:20–8c and d, is by implication applicable to the crime of theft of the utility's services under *N.J.S.A.* 2C:20–8a when such theft is accomplished by means of meter tampering.

The majority acknowledges that "the logic of the situation suggests that the presumption ought to apply as well to the higher degree theft crime. After all, most homeowners do not alter meters for benign purposes." *Ante* at 116. It resists the commonsense and logic of this position, however, because it is "not found in the language of the statute." *Ibid.* The Court seems to assume that because the presumption is not expressly set forth in the theft-of-service sections, the Legislature intended to exclude it. However, the Court makes too much of the textual location of the statutory presumption, failing to appreciate the Code's own interpretative rules. These rules make it

clear that the classification and arrangement of sections, and presumably subsections, are made only for the "purpose of convenience, reference and orderly arrangement" and not for purposes of "legislative construction." *N.J.S.A.* 2C:1–1f. Moreover, the Code itself directs that its provisions are to be construed "according to the fair import of their terms" and "to further the general purposes" governing the definition of offenses, which include those that "give fair warning of the nature of the conduct proscribed" and "differentiate on reasonable grounds between serious and minor offenses." *N.J.S.A.* 2C:1–2a(4), (5); 2C:1–2c.

As observed by the Appellate Division, these interpretative rules underscore the "court's responsibility 'to give harmonizing construction to legislation and to read it so as to give effect to all of its provisions and to the legislators will.'" *Dixon*, 220 *N.J.Super.* at 557 (quoting *State v. Channel Home Centers*, 199 *N.J.Super.* 483, 489 (App.Div.), certif. den., 93 *N.J.* 253 (1985)). Similarly, the Appellate Division observed that

"[p]ortions of a statute should not be viewed in isolation, but rather in relation to the whole and each part should be so interpreted as to harmonize with the others." 1 *Wharton's Criminal Law*, § 12, p. 61 (14th ed. 1987). Thus, "[w]here a choice must be made between two imperfect interpretations, the view should be selected which more likely accords with the probable legislative intent." *County of Monmouth v. Wissell*, 68 *N.J.* 35, 43 (1975). Indeed, a court may even delete or disregard statutory language when justifiable to fulfill the ascertained legislative intent. *Id.* at 44. [220 *N.J.Super.* at 558.]

As noted, the majority believes that aside from the textual location of the presumption, its plain language renders it inapplicable to theft-of-services offenses. However, the language of the presumption does not dictate the conclusion drawn by the Court. *N.J.S.A.* 2C:20–8c expresses the presumption as follows: "the existence of any of the conditions with reference to meters, pipes, conduits or attachments described in this section" is presumptive evidence of customer tampering. The reference to "this section" functions only to describe the presumption: the "conditions" that give rise to the presumption are those specified in the "section." Those "conditions" relate

to tampering with a meter in any way. When these conditions exist they constitute presumptive evidence that the customer did the tampering with the intent to defraud the utility. In short, the reference to "section" specifies the *existence* of the presumption, not its *application;* it does not indicate which offenses—meter tampering, theft of services, or any other kind of theft—are subject to the presumption.

In addition, the State argues that the use of the word "section" was meant to refer to all of *N.J.S.A.* 2C:20–8, the theft offenses as well as the meter tampering offenses. This surely is a fair reading of the language. The State points out that the Legislature made some slight amendments in the predecessor disorderly-persons law, *N.J.S.A.* 2A:170–6 (repealed 1979), changing the reference to "subsection" in carrying it over into *N.J.S.A.* 2C:20–8d. The State suggests the Legislature obviously intended that the term "subsection" refer to the particular subsection, (a), (b), (c), or (d), and "section" refer to the entire statute. It would follow then that the presumption applies to all theft offenses of *N.J.S.A.* 2C:20–8. The Appellate Division agreed:

> Our reading of the statute is further buttressed by the fact that the prior Title 2A versions of subsections (c) and (d) both employed the phrase, "described in this section" when referring to the applicability of the statutory presumption. *See N.J.S.A.* 2A:170–63 (repealed in 1979, now subsection (d)). However, when these two sections were transferred into the Code and became subsections of *N.J.S.A.* 2C:20–8, only the language in subsection (d) was changed. In particular, the language "in this section" was changed to "in this subsection or in subsection (c)." Thus, it may be argued that the Legislature was conscious and aware of the fact that its use of the word, "subsection" referred to the individual paragraphs of the statute and the word, "section" referred to the entire statute in question. [220 *N.J.Super.* at 558–59 (footnotes omitted).]

The Court's interpretation does not further the sense of the statute or coincide with the Legislature's intent in adopting the presumption. As the *Curtis* court stressed, the 1938 amendment, which created the presumption, was adopted in recognition "of the practical impossibility of proving by direct evidence the actual participation of the consumer in the illegal activity." 148 *N.J.Super.* at 240. Thus, as a matter of common sense,

consistency, and logic, it is anomalous to apply the presumption to the offense of meter tampering done solely to defraud a utility company (subsection (c)), while refusing to apply it to meter tampering done for personal gain (subsection (a)). The incongruity arises because the need for such a presumption or inference applies equally to both offenses, that is, to overcome the "practical impossibility" of proving by direct evidence the actual participation of a consumer in tampering with a utility meter, an impossibility that obtains to the same degree to both offenses. The difficulty the Legislature sought to alleviate by adopting the presumption, namely, the difficulty of proving that the consumer tampered with the meter, will naturally arise in any prosecution that alleges theft of electrical services by means of meter tampering. Unless courts are permitted to consider the presumption, it will be virtually impossible to obtain convictions in such cases. *See, e.g., State v. Insabella,* 190 *N.J.Super.* 544, 553 (App.Div.1983).

The majority emphasizes that subsections (a) and (c) of *N.J.S. A.* 2C:20–8 are distinct provisions and designate distinct crimes and offenses. *Ante* at 114–17. Yet, as the majority also accurately points out, the Code created, under *N.J.S.A.* 2C:20–8, "a generic crime of theft of services and defined services to include labor, professional service, transportation, telephone or other public service, accommodation in hotels, restaurants, and so forth." *Ante* at 114. Moreover, it is evident that meter tampering, though a disorderly persons offense, could readily be considered a lesser included offense of theft of services by means of meter tampering. *See, e.g., State v. Saulnier,* 63 *N.J.* 199 (1973). This is particularly true with respect to the offenses contained under Chapter 20 of the Penal Code. *See State v. Talley,* 94 *N.J.* 385 (1983).

The majority's point would be more telling were we dealing with prior law according to which crimes against property were distinct, and a defendant charged with one theft offense could not be convicted of another. *See, e.g., State v. Harrison,* 149 *N.J.Super.* 220 (App.Div.), certif. den., 75 *N.J.* 525 (1977).

When the Legislature adopted the Code, however, it consolidated all theft offenses. *N.J.S.A.* 2C:20–2(a), provides:

Conduct denominated theft in this chapter constitutes a single offense, but each episode or transaction may be the subject of a separate prosecution and conviction. *A charge of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter,* notwithstanding the specification of a different manner in the indictment or accusation, subject only to the power of the court to ensure fair trial by granting a bill of particulars, discovery, a continuance, or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise. *N.J.S.A.* 2C:20–2(a). (Emphasis added)

Thus, applying the language of this provision to this case, the "charge of theft" under 8a "may be supported by evidence that it was committed in any manner that would be [a theft offense] under [8d]." The presumption, being no more than an inference, is clearly "evidence," and, because it is expressly available to prove the offense of meter tampering, under one provision of section 8, it is also available to support the charge of theft of services under another provision of section 8, by proving that such theft "was committed in a [particular] manner," *i.e.,* by meter tampering.

Such an application would effectuate the legislative scheme behind the enactment of *N.J.S.A.* 2C:20–8. The Appellate Division noted that "the Criminal Law Revision Committee sought to consolidate under chapter 20 a number of so-called property crimes that had been separately treated in a large number of statutes under Title 2A." *Dixon, supra,* 220 *N.J.Super.* at 555. Among those property crimes that the Commission sought to consolidate under chapter 20 were the crimes of "obtaining property by false pretenses," contrary to *N.J.S.A.* 2A:111–1, and "fraudulent tampering" with electric, water, or gas meters, contrary to *N.J.S.A.* 2A:170–63 and 64. *Ibid.* (citing II *Final Report of the New Jersey Criminal Law Revision Commission: Commentary* at 216–20 (1971)). The court further noted that

with respect to the category described, as "Theft of Services," the Commission proposed only what eventually were passed as [subsections] a. and b. of *N.J.S.A.* 2C:20–8. I *Final Report of the New Jersey Criminal Law Revision*

*Commission: Report and Penal Code* (1971). Before passage, however, the Legislature specifically appended to this statute as [subsections] c. and d., what had previously been treated in *N.J.S.A.* 2A:170–63 and 64 as disorderly persons offenses. *State v. Insabella*, 190 *N.J.Super.* 544, 548 (App.Div.1983). Those statutes were independent of one another under Title 2A and each included the statutory presumption here in issue as a result of a legislative amendment in 1938. *State v. Curtis*, 148 *N.J.Super.* 235, 240–41 (App.Div.1977), certif. den., 75 *N.J.* 22. [*Id.* at 555–56.]

The Legislature established that all theft offenses are conceptually related notwithstanding differing elements and degrees of culpability. In effect, the Code codifies for all theft offenses the common-law doctrine that a defendant may be found guilty of a lesser offense included in a greater offense charged in the indictment; it statutorily categorizes such offenses as lesser included even though technically their elements may differ. *State v. Talley, supra,* 94 *N.J.* at 391 (by virtue of consolidation of theft offenses statute, defendant charged with robbery is on notice that any conduct denominated as theft is within the four corners of a robbery indictment). We thus recognized in *Talley* that when a defendant is indicted for one manner of theft under Chapter 8, he or she is on notice that the prosecution may prove a theft offense by a different manner under a different provision of Chapter 8. *Ibid.* It surely follows that if a defendant is indicted for one manner of theft under Chapter 8, the prosecution may prove a theft offense by the *same* manner, albeit found under a different provision of Chapter 8. As *Talley* strongly suggests, in either situation, the defendant must still answer to the ultimate crime of theft.

## II.

I subscribe to Judge Scalera's perception that the Legislature in the enactment of *N.J.S.A.* 2C:20–8 undertook to deal comprehensively "with the problems of theft and tampering with equipment relating to services supplied by public utilities, whether occasioned through meter tampering or otherwise." 220 *N.J.Super.* at 558. I am persuaded, as were the courts below, "that it was clearly the legislative intent to apply the

statutory presumptions whenever a person was prosecuted for theft of services under *N.J.S.A.* 2C:20–8," and that the requisite evidence of meter tampering was produced to trigger its application in this case. *Ibid.*

For these reasons I would affirm the judgment below. Accordingly, I dissent.

Justices POLLOCK and GARIBALDI join in this opinion.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, O'HERN and STEIN—4.

*For affirmance* —Justices HANDLER, POLLOCK and GARIBALDI—3.