196 N.J. Super. 397 (1984)
482 A.2d 964
STATE OF NEW JERSEY, PLAINTIFF,
v.
RICHARD A. WANCZYK, DEFENDANT.
Superior Court of New Jersey, Law Division Criminal, Union County.
August 21, 1984.
*400 Raymond J. Zeltner, Asst. Pros., for plaintiff (John H. Stamler, Prosecutor).
Joan Van Pelt, Asst. Dep. Pub. Def., for defendant (S. David Levy, Dep. Pub. Def.).
MENZA, J.S.C.
By pretrial motion, defendant seeks an order barring expert testimony from a state witness regarding the use of a bloodhound to track defendant after the alleged commission of a crime. There is no published authority in this State that addresses the admissibility of bloodhound evidence. For the reasons set forth below, I find that this evidence is reliable and admissible.
The defendant is charged with the crime of arson. After his arrest and while in custody, the police removed from the defendant's person his shoe and shirt and presented the items to a bloodhound dog, for the purpose of familiarizing the dog with the defendant's body odor or scent. The dog thereafter followed a certain trail allegedly marked by the scent. The State seeks to offer evidence of the trail followed by the dog as circumstantial evidence corroborative of other evidence offered by the State.
There is a split in decisional law of other jurisdictions regarding the admissibility of evidence of trailing by bloodhounds. The great weight of authority, however, is that the evidence is admissible if a proper foundation is first laid.[1] The theory upon *401 which bloodhound evidence is offered is based upon the proposition that the bloodhound has an acute sense of smell, which enables him to follow the scent of a particular individual. See Evidence of Trailing by Dogs in Criminal Cases, 18 A.L.R.3d 1221, et seq. The proponents of its admissibility contend that it is competent and reliable evidence where a proper preliminary foundation has been set.
The detractors of bloodhound evidence argue that the many variables involved in this type of evidence makes it uncertain and unreliable. They contend further that there are numerous other reasons to compel its exclusion. For example, they argue that the evidence is hearsay; that the defendant would be placed in jeopardy by the actions of an animal; that a defendant is unable to cross-examine a dog; and that a jury might be overly impressed by such testimony. People v. Centolella, 61 N.Y. Misc.2d 723, 305 N.Y.S.2d 279 (Oneida Co.Ct. 1969). None of these additional arguments has substance. It is the handler, not the dog, who is the witness, and his testimony falls within the category of opinion testimony. I am confident that the jury, given proper instructions, would be able to afford such evidence its due weight.
The question of the admissibility of bloodhound evidence in the final analysis turns on whether it is reliable. The opponents are correct in their assertions that there are many variables involved in this type of evidence. Bloodhound evidence depends on such factors, for example, as atmospheric conditions, the time lapse between the commission of the crime and the tracking, the number of people who were in a particular area at the time of the commission of the crime, and perhaps even how the dog may feel or behave on a particular day. Certainly, the bloodhound is not infallible. However, these *402 factors go to the weight of the evidence, not its competence. Indeed, in almost every case where expert opinion is offered, there are some variables which may affect the ultimate conclusion of the expert. For example, expert testimony by a physician, an every day occurrence in the courts, is influenced by numerous factors and variables which may affect the ultimate conclusion. Surely no one would argue that medicine is such an exact science so as to make the expert's opinion infallible. The standard for the admissibility of expert testimony is not whether it is unassailable and totally reliable, but whether it has a substantial degree of reliability and would be "an aid to the court or jury in determining the question in issue." State v. Cavallo, 88 N.J. 508, 517 (1982). It is the court's function to determine whether the scientific theory upon which an opinion will be based is accepted and reliable and whether the opinion would be useful to the jury. "In order to introduce scientific evidence, the proponent must demonstrate that the expert's technique has sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of the truth." [Emphasis supplied]. State v. Conway, 193 N.J. Super. 133, 169-170 (App.Div. 1984); Cavallo, supra, 88 N.J. at 517; State v. Hurd, 86 N.J. 525, 536 (1981); State v. Cary, 49 N.J. 343, 352 (1967).
It is a matter of common knowledge, of which courts may take notice, that dogs of some varieties, such as bloodhounds, foxhounds and bird dogs, are remarkable for the acuteness of their sense of smell, which enables them to follow a trail upon which they are laid, even though this trail be crossed by others. Copley v. State, 153 Tenn. 189, 281 S.W. 460 (1926).[2] A per se exclusion of bloodhound evidence is unreasonable. *403 While it reflects a legitimate concern for the reliability of dog-tracking evidence, the majority rule of admitting the evidence, once a "proper foundation" has been established, adequately safeguards against that concern. Cook v. State, Del. Supr., 374 A.2d 264, 270 (1977).
Evid.R. 56(2), dealing with the testimony of an expert in the form of an opinion, provides:
A witness qualified pursuant to R. 19 as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
The clear import of the Rule is to allow much latitude in the admission of expert opinion testimony. This is made clear not only by the report of the committee which adopted the Rules of Evidence, but also by virtue of the fact that the Rule permits an expert to give his opinion based on matters that are not in evidence such as his own observations or hearsay.[3]
The Rule, therefore, clearly permits the admission of testimony regarding bloodhound tracking, as long as the proper requirements of the Rule are met and a foundation is first laid.
Thus, the handler of the dog must first qualify as an expert. It must be shown that the handler has sufficient skill, training, knowledge or experience to be able to evaluate the actions of the dog. Second, the handler, once qualified as an expert, must give testimony regarding the particular dog that he used and the facts. These facts must include testimony:

*404 ... that the dog is of a stock characterized by acuteness of scent and power of discrimination and that the dog in question is possessed of these qualities; that the particular dog used was trained and tested in the tracking of human beings and that the dog was reliable in the tracking of human beings; that he was laid on the trail where the circumstances tended to show that the guilty party has been, or on a track which the circumstances indicated to have been made by him; that he followed such scent or track to or towards the location of the accused, and that he was properly handled. [C.J.S., Criminal Law 2d § 646 at 531].
Lastly, after the foundation has been laid, the handler may testify as to what the dog did regarding the tracking and his interpretation and opinion as to what the dog's actions mean.
I am satisfied from the testimony that the witness has sufficient knowledge and experience to be qualified as an expert in bloodhound tracking and that the other criterion has been laid.
It is to be noted, in conclusion, that the testimony of the dog handler is not dispositive of the guilt or innocence of the defendant. It is, at best, circumstantial and corroborative evidence, which the jury may accept or reject. It is permitted to be offered because it is basically reliable and may be useful to the jury in assisting it in reaching a determination. Simply stated, it is this Court's function to determine the admissibility of the evidence. It is for the jury to determine the weight it is to be given.
The proffered testimony of the dog handler regarding the bloodhound tracking of the defendant is permitted.
NOTES
[1] The following jurisdictions hold bloodhound evidence to be admissible provided a proper foundation is laid: Ala., Ark., Fla., Ga., Kan., Ky., La., Miss., Mo., N.C., Oh., Okla., Pa., S.C., Tenn., Tex., W. Va. The courts of Iowa, Mon., Neb., Ill., and Ind. take the view that the evidence is inadmissible. 18 A.L.R.3d 1221.
[2] While some jurisdictions have also required that the dog's pedigree be established, I agree with the more recent decisions rejecting that factor as a prerequisite to foundation and admissibility. See Terrell v. State, 3 Md. App. 340, 239 A.2d 128 (1968); State v. Rowland, 263 N.C. 353, 139 S.E.2d 661 (1965).
[3] The Joint Subcommittee on Evidence of the Supreme Court Civil and Criminal Practice Committees noted that the new formulation was adopted to "allow more latitude in the admission of expert opinion without being inconsistent with the `spirit' of the old rule."