255 N.J. Super. 228 (1992)
604 A.2d 978
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
IRWIN SWED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1992.
Decided March 30, 1992.
*232 Before Judges KING, DREIER and GRUCCIO.
Robert B. Donovan argued the cause for appellant (Schottland, Vernon, Aaron & Costanzo, attorneys; Bernard Meiterman, on the brief).
Mark P. Stalford, Assistant Prosecutor, argued the cause for respondent (John Kaye, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by GRUCCIO, J.A.D.
This appeal involves, among other things, the use of a permissive inference in the prosecution of a crime which was committed prior to the Legislature's creation of the inference. We affirm the use of the inference as it is a procedural matter and does not alter the prosecutor's substantive burden of proof.
Defendant Irwin Swed was tried to a jury and convicted of purposefully obtaining, without compensation, from Jersey Central Power & Light Company (JCP & L), services, to wit: electricity, with a value in excess of $500, contrary to the provisions of N.J.S.A. 2C:20-8. After hearing oral argument, the trial judge denied defendant's motion for judgment of acquittal or, in the alternative, for a new trial, sentencing defendant to five years' probation and ordering him to make *233 restitution to JCP & L and serve 100 hours of community service.
On appeal, defendant contends:
1. The trial court improperly allowed the admission of documentation which was hearsay and did not fall within the business records exception to the hearsay rule.
2. The trial court's charge that pursuant N.J.S.A. 2C:20-8, a permissive inference could be drawn that tampering was created by the person to whom the electricity was being furnished was violative of due process as well as the United States constitutional ex post facto prohibition.
3. The trial court improperly denied defendant's request for a Clawans charge.
4. The trial court improperly allowed Cross to testify as an expert witness on the quantum of damages.
5. Giving the State the benefit of all reasonable inferences which could be drawn from the evidence adduced at trial, same is insufficient to enable a jury to find that the State's burden has been established beyond a reasonable doubt.
We find defendant's contentions without merit and affirm the conviction.
The facts relevant to this appeal are as follows: On October 1, 1985, Andrew Catania, a meter reader/collector for JCP & L, read the electricity meter at 46 Larchwood Avenue in Oakhurst. While so doing, he noticed that the hands of the meter were not properly aligned. So noting on his report, Catania suggested that an investigation be done by JCP & L.
Alfred M. Cross, the supervisor of Investigation Revenue Protection services for JCP & L, participated in the investigation and testified that the customer of record at 46 Larchwood Avenue from the period between October 30, 1978, through February 26, 1986, was defendant. Cross was privy to such information through his authorization to check the company records for identities of various customers. Cross stated that 90% of customer applications are processed by telephone and immediately put into a computer. He admitted that there was rarely an attempt made by the company to verify the identity of the person who applies as the customer of record. From May 1978 to present, all electric bills were sent to defendant at 46 *234 Larchwood Drive and no complaint was ever received as to the proper billing party. Cross observed defendant's son emerging from the residence in question, but had not seen defendant there.
Gary Ganun, a meter tester with JCP & L, testified that he visited defendant's residence on October 25, 1985. He stated that when he examined the meter at the residence he noticed that the glass cover appeared to have been tampered with as the stickers which the power company puts on the meter to indicate tampering were crooked and the dial hands were not calibrated correctly. He also testified that the base had been broken away from the meter.
Ganun then produced defendant's actual meter and demonstrated to the jury how it had been tampered with by pointing to the areas on the meter which were indicative of such acts. Photographs were also taken of the meter at the time that Ganun and Investigator Barry Bittenmaster were inspecting the premises. These photographs were introduced to the jury at trial.
Investigator Bittenmaster testified that on October 29, 1985, as a result of being assigned to investigate a suspected theft of electricity, he proceeded to 46 Larchwood Avenue in Oakhurst. Bittenmaster said that he had investigated several hundred similar incidents and, based on his training and experience, he detected an erratic and untraceable pattern in the amount of energy usage by defendant and his family. Bittenmaster conducted a full survey of the grounds in order to determine whether there was an alternative energy source, but was unable to find one. The photographs of the residence supported this conclusion. Bittenmaster also examined the meter and found that the seal which connected the top cover of the meter to the main box was broken and replaced in an apparent attempt to avert any suspicion of tampering. Bittenmaster also testified that another seal, whose purpose is to preserve the integrity of the internal meter workings, had been removed and *235 was found in the bottom of the meter pan. Based upon the average consumption of defendant's residence and the average for the area, Bittenmaster estimated that between June 1978 and June 1986, defendant used, but failed to pay for, approximately $23,000 worth of electricity, which authorized the indictment pursuant to N.J.S.A. 2C:20-8.
In October 1985, the meter was removed, tagged and transported to the meter testing facility for examination by meter tester William Kennedy. Kennedy tested the meter and found it to be accurate.
Defendant admitted that he had lived at 46 Larchwood Avenue from June 1978 until the present. He stated that his job kept him away from his home and enabled him to return only for very brief visits throughout the year. Defendant indicated that the primary residents of 46 Larchwood Avenue were his wife and children. He also stated that in order to conserve heat in the house the family placed heaters in the children's bedrooms. Defendant said that it was necessary to conserve heat in the winter months because the house had a cathedral ceiling in its living room and its dining room ceiling was 12 to 14 feet high.
On February 25, 1986, Bittenmaster, together with members of JCP & L, the Monmouth County Prosecutor's Office and the Ocean Township Police Department executed a warrant to survey the premises. The warrant enabled JCP & L to conduct a load survey of the premises.
Defendant contends that the trial court erred in admitting computer printouts, generated by JCP & L, which identified him as the customer of record for 46 Larchwood Avenue in Oakhurst. Defendant contends that the foundation laid for the documents' admission was inadequate under Monarch Fed. Sav. & Loan Assn. v. Genser, 156 N.J. Super. 107, 383 A.2d 475 (Ch.Div. 1977).
Evid.R. 63(13) sets forth the business entry exception to the hearsay rule as follows:

*236 A writing offered as a memorandum or record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it was based was made in the regular course of a business, at or about the time of the act, condition or event recorded, and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission.
Although this rule is perfectly clear with respect to records which are humanly recorded and stored, supplemental analysis is required when contemplating the admissibility of computer-kept records.
A computer printout may be admitted as evidence of a party's account and constitute prima facie evidence of its existence. Sears, Roebuck & Co. v. Merla, 142 N.J. Super. 205, 208, 361 A.2d 68 (App.Div. 1976). A proper foundation for the records is required, however, before they may be admitted. Id.
The seminal decision with regard to the requisite foundation for admitting computer records is Monarch Fed. Sav. & Loan Assn. v. Genser, supra. There, the court set forth that the foundation requirements for admissibility of any business record could be divided into six elements.
The first element, personal knowledge on the part of the witness as to the act or event recorded, was eliminated by the New Jersey courts in State v. Martorelli, 136 N.J. Super. 449, 453, 346 A.2d 618 (App.Div. 1975), certif. den., 69 N.J. 445, 354 A.2d 642 (1976). Thus, the Monarch court determined that personal knowledge would likewise not be required where computer records were sought to be introduced. Monarch Fed. Sav. & Loan Assn. v. Genser, supra, 156 N.J. Super. at 125-26, 383 A.2d 475.
The second element for admissibility, historically, was whether the foundation witness was the custodian of the records or was otherwise qualified to testify as to their authenticity. Id. at 126, 383 A.2d 475. The Monarch court held that no specific person needed to be called in "computer cases", but the person who is called should be able to testify as to the type of computer employed, the permanent nature of the record *237 storage and how daily transactions are customarily recorded. Id. at 128, 383 A.2d 475.
In an Evid.R. 8 hearing, Cross explained the procedure for determining the customer of record by using computers. He testified that nearly all orders were telephone requests for service, which were then entered into the main computer under the requesting party's name and given address. JCP & L prepares a "computer raised on loan input record to establish the customer [and] effective date and issue[s] orders to the field to turn it on depending upon what information is received." Cross stated that this had been JCP & L's procedure since 1978.
The purpose of this foundation element is to prove that the witness is sufficiently qualified to testify to the trustworthiness of the methods of preparation. Cross's testimony satisfied this aspect of the test by examining JCP & L's computerized recording process which is used to service several million customers in New Jersey. Although Cross did not specify the type of computer used in this process, he did establish how daily records were formed and how the records were stored. His familiarity with the system and with defendant's account was sufficient to establish the trustworthiness of the documents.
The third foundational element is proof that the computer records were made in the ordinary course of business. Id. at 128, 383 A.2d 475. It is apparent from the testimony that the pertinent records were made as part of the daily practice of JCP & L and, therefore, satisfied this element of the foundational proofs.
The fourth element is proof that the entry was made within a reasonable time after the transaction occurred. Id. at 129, 383 A.2d 475. In this instance, entries are recorded simultaneously with a customer's request. There is little or no chance of forgetting the proper name or address of a customer as it is entered immediately upon the customer's utterance. Thus, the *238 purpose of this element, to minimize forgetfulness with the lapse of time, is satisfied in JCP & L's procedure.
The fifth proof is the validity of the source of information from which the entry is made. Id. at 130, 383 A.2d 475. Defendant alleges that JCP & L fails in this element because they customarily do nothing to verify the caller and the customer of record. As JCP & L services millions of residents, such a procedure would be prohibitively expensive. Logic suggests that if an error arose, it would be reported by the customer who was unjustly charged. Investigation revealed that defendant had been the customer of record since 1978; that no request for name or address change had been made in that time; and that JCP & L has a record of payments from defendant since 1978. It may be presumed, therefore, that unless an imposter has been identifying himself as defendant and has been paying defendant's bills, the electric used at 46 Larchwood Avenue was, in fact, consumed by defendant and his family. The testimony and records produced satisfy the identification of defendant as the customer of record at the relevant property.
The final element which must be proven is the validity of the method used in obtaining the computer printout. Id. at 131, 383 A.2d 475. This proof requires the foundation expert to testify to the accuracy and reliability of the computer, its mechanical operations and its acceptance in the field as standard and efficient equipment. Ibid. Although there was no testimony as to the mechanical workings of JCP & L's computers, testimony set forth that readers observe electric meters every month and enter the reading directly into a hand-held computer which forms the basis of the bill. This practice is considered efficient and standard in the field.
With the advent of computers has come an implicit trust in their dependability, owing primarily to the results they achieve. The mechanical (or electronic) explanation of computer workings would likely have been beyond the grasp of most jury members and would not have proved helpful in establishing the *239 reliability of the records. The procedure used by JCP & L, however, is familiar to every person who pays an electric bill. An explanation of the internal workings of a massive computer system belies common sense and judicial efficiency.[1] Computer usage permeates every strata of society and is customary in modern life.
The computer printouts presented on behalf on JCP & L satisfied the foundational requirements set forth by this court in 1977. Defendant's contention that the printouts should be excluded is meritless and the trial court's admission of the records is affirmed.
Defendant next contends that the trial court erred in informing the jury that it could draw a permissive inference, under N.J.S.A. 2C:20-8, that a meter which exhibits signs of tampering is presumptive evidence that the person receiving electrical service monitored by such meter has effected the tampering with intent to defraud. Defendant posits that such charge resulted in a violation of his due process rights and the ex post facto clause of the Constitution.
N.J.S.A. 2C:20-8 provides:
a) A person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, ... including but not limited to mechanical or electronic devices ... to avoid payment for the service. "Services" include labor, or professional service; .. . telecommunications, electric, water, gas, cable television....
(emphasis added). The statute, in subsections (c), (d), (e) and (h), then defined a disorderly persons offense concerning which the statute provided certain presumptions under these provisions. The existence of the physical conditions showing the tampering was presumptive evidence that the person being *240 provided the service created the tampered condition with intent to defraud.
On January 24, 1989, our Supreme Court in State v. Dixon, 114 N.J. 111, 553 A.2d 1 (1989), held that the presumption of customer-owner responsibility for meter tampering, which was applicable solely to disorderly persons offenses dealing with utility tampering, did not extend to the more serious crime of theft of the utility's services.
On June 29, 1989, however, N.J.S.A. 2C:20-8 was amended to extend the aforementioned presumption to include the theft of electric services, to wit:
1) The presumptions of evidence applicable to offenses defined in subsections c., d., e. and h. of this section shall also apply in any prosecution for theft of services brought pursuant to the provisions of subsections a. or b. of this section.
Defendant claims a due process violation on the grounds that the Supreme Court decided Dixon three months after the Legislature's amendment to the statute, and that this offense occurred before the amendment. The statute was amended on June 29, 1989, and Dixon had been decided in January of that year. Therefore, Dixon does not stand for the proposition that the Supreme Court refused to apply the amended statute retroactively.
The judge's charge, which was given in September 1990, was in conformity with the Legislature's amendment. While it applied the statute retroactively, it did not deprive defendant of due process on his stated grounds.
Our Supreme Court in State v. Zola, 112 N.J. 384, 548 A.2d 1022 (1988), cert. den., 489 U.S. 1022, 109 S.Ct. 1146, 103 L.Ed.2d 205 (1989), and State v. Breakiron, 108 N.J. 591, 532 A.2d 199 (1987), discussed the due process difficulties inherent in placing the burden of proving an affirmative defense upon a defendant. Our courts have ruled that so long as the State remains responsible to prove the elements of an offense beyond a reasonable doubt, the Constitution is not violated by imposing *241 upon a defendant the burden of proving an insanity defense. State v. Breakiron, supra, 108 N.J. at 601, 532 A.2d 199.
Although these decisions discuss a shift in the burden of proof in a criminal case, no such alteration has occurred here. The prosecution was entitled to inform the jury that they may draw an inference from the facts established in evidence. Its burden was not lessened by the amendment, nor was the defendant's increased. As such, defendant has not suffered a due process deprivation by the court's allowance of the inference.
Defendant further contends that the charge was an ex post facto application of the law since the amendment postdated the date of defendant's indictment and the prosecution could not have proven its case beyond a reasonable doubt without the benefit of the presumption. The acts for which defendant was on trial were alleged to have occurred between 1976 and October 1985. The amended statute was passed in July 1989, and defendant's case was heard in September 1990.
In State v. Humanik, 199 N.J. Super. 283, 489 A.2d 691 (App.Div.), certif. den., 101 N.J. 266, 501 A.2d 934 (1985), aff'd in part, rev'd in part, sub nom. Humanik v. Beyer, 871 F.2d 432 (3d Cir.1989), cert. den., 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), we held that a statutory amendment could be applied retroactively, so long as the amendment did not change or modify the evidence required by the prosecution to obtain a conviction. Id. at 303, 489 A.2d 691. Relying upon various decisions from the United States Supreme Court, we stated that no ex post facto violation occurs if the change is merely procedural and does not increase the punishment nor change the ingredients of the offense. Id. at 301, 489 A.2d 691 (citing Weaver v. Graham, 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17, 23 n. 12 (1981)).
The Third Circuit affirmed our disposition of the ex post facto issue in Humanik. There, the Court stated that if the burden of proof placed upon the prosecutor is not altered by a law *242 which becomes effective pursuant to the commission of the crime, the law's application to defendant will not violate the ex post facto clause of the Constitution. Humanik v. Beyer, supra, 871 F.2d at 436.
Our Supreme Court has held that burdens of proof are procedural within the meaning of N.J.S.A. 2C:1-1(c)(1). Justice Pashman stated that, in the context of codified criminal law, procedure refers to the prosecution of a criminal case whereas substance refers to the conduct which is deemed criminal. State v. Molnar, 81 N.J. 475, 488, 410 A.2d 37 (1980). The Court concluded that procedural matters may be retroactively applied to offenses committed prior to the Code's enactment. It found no fundamental unfairness in employing the burden of proof by the case law then prevailing. Id. at 489, 410 A.2d 37. Here, a presumptive inference, rather than a burden of proof, is at issue. Nonetheless, the inference affects the burden of proof and, therefore, under Molnar, is procedural. Since the trial judge charged the jury with the law as it stood at the time of trial, no due process deprivation occurred.
An inference allows the jury to apply its common logic to a particular setting. See State v. Dixon, supra, 114 N.J. at 113, 553 A.2d 1 (finding that is not unfair to suggest to the jury that in evaluating the offense of possession of an unlicensed weapon, it may infer from non-production of the license that the gun was unlicensed). The inference is of vastly lesser moment than the presumption as it does not obviate the prosecution's burden of proof nor any element thereof. Further, the inference is permissive, and thus is contingent upon the facts proven by the State. This was clearly explained by the trial judge when he stated:
Now, I do instruct you that if you find that the metering device, the meter on defendant's house, was tampered with or interfered with, then you may draw the inference, if you wish to draw that inference, that the person receiving electrical services monitored by the meter in question has tampered with it with the intent to defraud. However, you are never required or compelled to draw such an inference. It is your exclusive province to determine whether the facts and the circumstances shown by the evidence in this case support such an *243 inference and you are always free to accept or reject that inference, if you wish. And bear in mind that in your determination in this regard, is the State's burden to prove defendant's guilt beyond a reasonable doubt of each element of that offense.
This charge properly established the permissive inference here and clearly set forth that it was to be drawn upon facts established by the prosecutor beyond a reasonable doubt. Moreover, the judge clearly indicated that the jury was free to accept or reject the inference.
Under the statute, the State was obliged to prove that: (1) defendant obtained a service; (2) by deception or other means inclusive of tampering with an electric meter; (3) that defendant did so purposely; and (4) defendant knew that the services were available for compensation. N.J.S.A. 2C:20-8. The State produced facts which satisfied each of these elements, and formed a proper basis for the permissive inference. Defendant was not disadvantaged by the application of the amendment to him, nor by the judge's charge to the jury.
The trial judge made clear in his charge that the inference was, indeed, permissive and did not mandate guilt. The court's charge was in conformity with State v. Humanik, its progeny and State v. Curtis, 148 N.J. Super. 235, 372 A.2d 612 (App. Div.), certif. den., 75 N.J. 22, 379 A.2d 253 (1977), which held that a permissive inference is to be drawn from facts established at trial, and does not obviate the State's burden of proof.
The trial judge's charge, which included the permissive inference, was correct under the current law at the time it was given. Since the presumption did not shift the prosecution's burden of proof, and thereby did not disadvantage the defendant, the judge did not err in instructing the jury that they were permitted to draw an inference of guilt if they were satisfied that the facts presented supported the inference. The judge's instruction to the jury is affirmed.
Defendant next contends that the State failed to call a necessary witness and that the trial judge's failure to grant *244 defendant's request for a Clawans[2] charge was reversible error. The witness, deemed necessary by defendant, was a meter reader who had visited defendant's residence and had failed to note a problem with the meter at that time.
Joseph DeFillipo conducted a meter test at defendant's residence on February 19, 1985. No record was made of any problems with the meter at the time of DeFillipo's examination.[3] The first reported difficulty with the meter was in October of 1985. Based upon this evidence, defendant alleges that DeFillipo's testimony would have revealed that the theft of services charges should be measured from October, 1985, rather than from 1978, as posited by the State.
In State v. Clawans, 38 N.J. 162, 183 A.2d 77 (1962), the Court held that the failure of a party to produce evidence which would elucidate the facts in issue raises a natural inference that the party fears exposure of those facts. Id. at 170, 183 A.2d 77. The Court allowed the inference upon the conditions that the witness' testimony would not be cumulative, and that his testimony would be far superior to any other produced. Id. at 171, 183 A.2d 77. The Court also established that the failure to call a witness available to both parties precludes raising the inference against either party. Ibid.
The matter here does not present facts sufficient to justify a Clawans charge. Defendant had the opportunity to call DeFillipo, and was provided with his address and telephone number by the State (at the court's behest). Indeed, the court offered to adjourn to allow defendant's counsel the opportunity to interview DeFillipo, but counsel declined. Defendant contends that the burden was upon the State to call DeFillipo in order to prove the elements of its case. Clearly, DeFillipo's testimony was not crucial to the State's case as defendant was *245 convicted without it. Moreover, the trial court determined that DeFillipo's testimony would have been cumulative since the topic of his testimony already would have been explained by Cross and Kennedy.
Applying the principles enunciated in Clawans, the denial of defendant's motion for a Clawans charge was proper. A charge to the jury that they may draw an unfavorable inference from the State's failure to call a witness who was not necessary to its case would be thoroughly confusing. Indeed, such a result was specifically denounced by the Justices in Clawans. As such, the trial judge properly denied giving the Clawans charge and his decision is affirmed.
Defendant next contends that Cross was not qualified to testify as to the quantum of JCP & L's pecuniary loss, and that his testimony was inadequate in that he utilized projections to calculate JCP & L's lost revenues. Cross estimated the approximate amount of energy used by defendant over the period of time in which his meter was broken. Cross based his opinion on 12 years of experience with JCP & L, four years of which were devoted to investigating alleged thefts of electricity. Cross is also a state-certified energy auditor. His duties in that regard include analyzing buildings by size and dimension in order to approximate the amount of energy they will require for daily maintenance. Cross stated that he has been conducting similar surveys since 1981. His experience is beyond that of the average juror in this respect and his opinion was substantiated by his method of calculation.
Evid.R. 56 explains that a witness may testify as an expert when he is able to impart onto the jury information which he has acquired through experience, knowledge, skill, expertise training or education. Only when such testimony will aid the trier of fact in reaching its conclusion, however, will such testimony be admitted. See State v. Gunter, 231 N.J. Super. 34, 41, 554 A.2d 1356 (App.Div.), certif. den., 117 N.J. 80-81, 563 A.2d 841 (1989). Thus, expert testimony should only be *246 admitted where it is distinctly related to a particular science, profession or occupation in which the witness is sufficiently experienced. State v. Kelly, 97 N.J. 178, 208, 478 A.2d 364 (1984).
Defendant alleges, however, that Cross's method of calculation was too tenuous to be relied upon by the court or the jury. Although proffered testimony cannot be based upon unreliable scientific techniques, expert testimony should not be rejected merely because it is not completely accurate and reliable. State v. Wanczyk, 196 N.J. Super. 397, 401-02, 482 A.2d 964 (Law Div. 1984). Nearly every case contains variables which may affect an expert's conclusion, and the validity of that opinion should be determined by the jury. Most electric consumers are familiar with the JCP & L's estimation practice and accept the averaging method utilized in monthly billing. A similar practice was used by Cross in his estimation. The practice was sufficiently reliable to submit to the jury and the judge's ruling, so permitting, is affirmed.
Defendant finally contends that the prosecution failed to present evidence sufficient to convince the jury, beyond a reasonable doubt, of his guilt. Specifically, defendant contends that the State failed to prove that defendant is the individual who committed the offense charged.
The proper standard of review here is whether the State has presented sufficient evidence to warrant a conviction of the crime charged. We have considered whether the jury could have been convinced beyond a reasonable doubt, when viewing the State's evidence in its entirety and giving the State the benefit of all its favorable testimony and all reasonable inferences to be drawn therefrom. State v. Reyes, 50 N.J. 454, 458, 236 A.2d 385 (1967). We find the evidence presented to be sufficient to convict. Defendant testified that his residence is 46 Larchwood Avenue and that he and his family have lived there since 1978. Although he claims his family paid the bills, *247 defendant never requested that the customer of record be changed.
Investigator Bittenmaster also offered an identification of defendant as the person who answered the door at that residence on October 9, 1985, during one of his visits. Although the identification was somewhat tenuous, Bittenmaster stated that defendant was of similar size and general appearance as the man who answered the door at the residence on the day of his visit. Testimony that defendant resembles the person observed by the witness may be admitted when considered with other evidence. State v. Lutz, 165 N.J. Super. 278, 291, 398 A.2d 115 (App.Div. 1979). As such, this positive identification, coupled with defendant's admission that he lived at the residence and his son's testimony that the home at that address was his father's house, was sufficient to identify defendant as the owner of the residence.
The evidence clearly shows that defendant was the owner of the residence when meter tampering occurred. Bills sent by JCP & L were paid monthly by defendant's family, defendant had title to the property and was identified there. The evidence presented was ample to convince the jury beyond a reasonable doubt that defendant was the proper person charged. The evidence was, likewise, sufficient to support a conviction. The trial judge's ruling denying the motion for acquittal is affirmed.
Affirmed.
NOTES
[1] Some thought should be given, however, to the time period in which the Monarch opinion was penned, and the progress that has been made in computer technology over the past 15 years. The requirement that a modern, foundation witness testify to a computer's mechanical workings is ineffectual in proving its reliability.
[2] State v. Clawans, 38 N.J. 162, 183 A.2d 77 (1962).
[3] Testimony revealed, however, that no difficulty was reported because DeFillipo was unable to test the meter.