274 N.J. Super. 203 (1994)
643 A.2d 665
ANNA TOMASSINI, PLAINTIFF,
v.
PAUL H. SAUNDERS, THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, KENNETH D. MERIN, COMMISSIONER OF INSURANCE, DEFENDANTS, PATRICK O'HARA, PLAINTIFF,
v.
PAUL H. SAUNDERS, JOHN DOE (A FICTITIOUS NAME), UNSATISFIED CLAIM & JUDGMENT FUND BOARD AND MARKET TRANSITION FACILITY (IMPROPERLY DENOMINATED NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOC., DEFENDANTS.
Superior Court of New Jersey, Law Division Civil Action, Union County.
Decided January 26, 1994.
*204 Raul F. Tous, for plaintiff Anna Tomassini.
*205 David Gelband for plaintiff Patrick O'Hara (Kirsch, Gelband & Stone, attorneys).
John W. Noonan for defendants Paul H. Saunders and the Unsatisfied Claim and Judgement Fund (Thomas P. Ford, attorney).
Lee S. Befeler for defendant Market Transition Facility (Sullivan & Graber, attorneys).
MENZA, J.S.C.
On January 28, 1991, the plaintiffs, pedestrians in this consolidated action, were injured when they were struck by an automobile owned and operated by the defendant, Paul Saunders, (Saunders). Prior to that date Saunders had been insured by Market Transition Facility of New Jersey (MTF). Plaintiffs brought suit against Saunders, MTF and the Unsatisfied Claim and Judgment Fund (UCJF), the latter because MTF contended it did not insure Saunders on the date of the accident. On December 2, 1993, a hearing was held to determine whether Saunders was insured by MTF on the date in question.
The defendant Saunders was insured with MTF from December 4, 1989 to December 4, 1990. MTF contends that on October 21, 1990, Computer Services Corporation (CSC), MTF's servicing carrier, mailed Saunders a renewal quotation which stated that payment for the new policy was due on or before December 4, 1990. MTF contends that Saunders did not pay the renewal premium and therefore was not covered by MTF on the date of the accident.
MTF produced only one witness at the hearing, a CSC employee. She testified with regard to a computer record pertaining to the Saunders' policy. Specifically, she testified that the computer printout was made in the regular course of business, and except for the insurance application which was on microfilm, was the only document which MTF maintained concerning the Saunders' policy. *206 The witness had no independent knowledge of the facts concerning the Saunders' policy.
The computer printout states the following:

 POLICY HISTORY SUMMARY AS OF 09 09 92
 POLICY CS11435792 INSURED SAUNDERS PAUL H VERSION ARCHIVE
 CURRENT TERM  FROM 12/04/90 TO 12/04/91
 TRANS PROCESS CHANGE AMOUNT AMOUNT WRITTEN
 SEL LOC DATE DATE BILLED PAID PREMIUM ISF
  A 12/19/90 12/04/90
 RENEWAL LAPSE
  A 12/04/90 12/04/90
 RENEWAL CANCEL
  A 10/21/90 12/04/90 540.90
 PENDING RENEWAL
  A 09/23/90 06/29/90 227.33
 CASH PAYMENT
  A 08/31/90 06/29/90 227.33
 INSTALLMENT CANCEL
  A 07/29/90 06/29/90 227.33
 INSTALLMENT BILL

MTF has produced no evidence other than the computer printout in support of its position that the Saunders' policy was not renewed. It contends that it need not do so and that the information contained in the computer printout is admissible in evidence and is prima facie proof of that which it asserts, namely that the Saunders policy was not renewed because Saunders did not pay the premium. The Unsatisfied Claim and Judgment Fund disagrees, arguing that the computer printout is not admissible because a proper foundation has not been laid and because the information contained in the computer printout is inadequate as proof that Saunders' policy was not renewed. Evidence Rule 803(c)(6), the business entry exception to the Hearsay Rule, states:
Records of regularly conducted activity. A statement contained in a writing or other record of acts, events, conditions, and subject to Rule 808, opinions and diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.
*207 In State v. Martorelli, 136 N.J. Super. 449, 346 A.2d 618 (App. Div. 1975), the court set forth the three requirements for admissibility under this rule:
First, the record must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Third, the source of information and the method of preparation must justify allowing it into evidence.
[136 N.J. Super. at 453, 346 A.2d 618.]
Computer printouts are admissible under the business entry rule as long as a proper foundation is laid. The case of Monarch Federal Sav. & Loan Assoc. v. Genser, 156 N.J. Super. 107, 383 A.2d 475 (Ch.Div. 1977) sets forth the foundation criteria for the admission of computer printouts. In that case, the court stated:
No specific person must be called to supply the foundation testimony for the admission of business records. However, whoever testifies must be in a position to supply the foundation specified in Evid.R. 63(13), i.e., the regular course of business, the time of the making of the record and the event recorded, the sources of information recorded, and finally, the methods and circumstances of the computer record's preparation.
[Id. at 128, 383 A.2d 475.]
In the treatise American Law Reports, the authors also set forth the criteria for the admission of a computer printout.
In addition to proof that a computerized business record was made in the regular course of business at or near the time of the occurrence of the act, condition, or event recorded therein, proof may be required of the type of computer used and its acceptance as standard and efficient equipment, its method of operation, the competency of its operators, and the method and circumstances of preparation of record, including the sources of information on which it is based, the procedures for entering and retrieving information from the computer, and the controls and checks used, as well as the tests made, to insure the accuracy and reliability of the record. In addition, proof of the identity of the record as well as an explanation of its meaning may be necessary.
[7 A.L.R. 4th 8, sec. 2[a], at 13.]
In U.S. Fidelity & Guaranty v. Young Live Campaign, 42 Colo. App. 298, 600 P.2d 79 (1979), the court, in holding that there was no proper foundation for the admissibility of a computer *208 printout which purported to reflect computations of premium adjustments, stated:
We here find that a proper foundation was not laid. Neither the custodian of the records nor any person familiar with their preparation testified. There was not testimony establishing when the information contained in the documents was fed into the computer, i.e., when it was recorded. No testimony showed that the information was transmitted by one with personal knowledge. And it was not shown that the documents were produced in the regular course of business or that it was the regular practice of the business to make this record.
[Id. 600 P.2d at 82.]
MTF has similarly failed to lay the necessary foundation for the admissibility of the computer printout. No proofs were submitted by it regarding the methods used, the sources of information, the time of preparation nor the procedures for entering and retrieving information in the computer, all of which are necessary proofs for the admissibility of the computer printout.
The printout is therefore inadmissible.
However, even if the printout were admissible, it would still be insufficient proof of that which it asserts. Four words are offered as proofs that the policy lapsed: "renewal cancel" and "renewal lapse." These words are unclear, conclusory and lacking in specificity. And if these same four words were written on a piece of paper and introduced into evidence as a business record, without other proofs, this court would declare it as insufficient proof of that which it asserts. Most business records generate a paper trail, such as invoices or letters, and although computers exist in order to store and permit retrieval of information, it or something else must at least show the data itself on which the computer record's conclusory language relies  in effect, a paper trail. No documents in the way of copies of bills or letters or anything else have been provided by MTF in support of its position that the Saunders policy was not renewed because the premium was not paid. There is a certain fascination that the public has with computers, a magic if you will, which compels one to declare that if the computer says so, then it must be so. A *209 large part of this attraction is based on the computer's proven reliability.
With the advent of computers has come an implicit trust in their dependability owing primarily to the results they achieve ... computer usage permeates every strata of society and is customary in modern life.
[State v. Swed, 255 N.J. Super. 228, 238-239, 604 A.2d 978 (App.Div. 1992).]
And so, therefore, in this case it would be easy to conclude that, since the computer printout stated that notice was sent to Saunders, that the premium was not received and that the policy accordingly lapsed, then it must be so. But just because something is in a computer does not thereby mean that the information is sufficient to carry one's burden of proof. Sufficiency for admissibility does not equate with sufficiency of proof. The information contained in the computer must be of the same worth as any other business record submitted as proofs of that which it asserts. The information in this business record is lacking in that regard.
MTF has failed in its proofs and its case is, therefore, dismissed.