**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3774-16T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RAYMOND A. MCNEIL,

      Defendant-Appellant.

_____

Argued April 3, 2019 – Decided July 15, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-04-1154.

Margaret R. McLain, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the brief).

Maura Murphy Sullivan, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Maura Murphy Sullivan, of counsel and on the brief).

PER CURIAM

The State presented evidence to a petit jury that defendant Raymond A. McNeil pointed a power drill wrapped in a towel at a bank teller and twice told her, "Give me all the money bitch." When the teller did not respond, defendant left the bank without money. He was later tracked to a nearby abandoned building by a K-9 unit following a dispatcher's advice that the bank robber "fled towards the Avondale neighborhood, which is directly across Sicklerville Road" from the bank. The jury found defendant guilty, and defendant appeals from his convictions and aggregate twenty-year sentence, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for first-degree robbery, N.J.S.A. 2C:15-1, third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). He argues:

> POINT I
>
> THE ADMISSION OF HEARSAY STATEMENTS IN THE FORM OF THE CALL FROM DISPATCH AND STATEMENTS MADE BY UNNAMED, NON-TESTIFYING WITNESSES VIOLATED [DEFENDANT'S] CONSTITUTIONAL RIGHT TO CONFRONTATION.

A-3774-16T3

POINT II

THE CANINE HANDLER'S TESTIMONY FAR EXCEEDED THAT PERMITTED BY A LAY WITNESS; ADMITTING THIS TESTIMONY WITHOUT QUALIFYING THE WITNESS AS AN EXPERT DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL.

POINT III

[DEFENDANT'S] ROBBERY CONVICTION MUST BE REVERSED BECAUSE ATTEMPTED THEFT WAS THE BASIS FOR ROBBERY AND THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE LAW OF ATTEMPT AS AN ELEMENT OF ROBBERY.

POINT IV

THE CUMULATIVE IMPACT OF THE ERRORS DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL.

POINT V

BECAUSE [DEFENDANT'S] REQUEST TO PROCEED PRO SE WAS BOTH KNOWING AND VOLUNTARY, THE DENIAL OF HIS MOTION VIOLATED HIS CONSTITUTIONAL RIGHTS TO SELF-REPRESENTATION.

POINT VI

THE SENTENCING COURT'S IMPROPER CONSIDERATION OF [DEFENDANT'S] PRIOR ARRESTS THAT DID NOT LEAD TO CONVICTION AND HIS SUBSTANCE ABUSE HISTORY IN

FINDING AGGRAVATING FACTORS, AS WELL AS THE FAILURE TO PROPERLY MERGE TWO OF THE CONVICTIONS, REQUIRES A REMAND FOR RESENTENCING.

A.  Consideration of two prior arrests where the charges were dismissed violates State v. K.S.

B.  Consideration of the defendant's substance abuse history in finding aggravating factor three violates State v. Baylass.

C.  The robbery and possession of a weapon for an unlawful purpose convictions must merge.

We agree the trial court erred in denying defendant's request to represent himself and reverse.

Although represented by counsel, defendant, in the words of the trial court, "submitted a document . . . titled, [']Re: Notice of Proceeding Pro Se.'" Despite defendant's failure to comply with the motion-filing requirements of the Rules of Court, the trial court "treated that as a [m]otion for [s]elf-[r]epresentation."

The trial court fully appreciated its duty to conduct a "searching examination" essential "to assure that a defendant's waiver of counsel is made 'knowingly and intelligently.'" State v. King, 210 N.J. 2, 18, 20 (2012) (quoting State v. Crisafi, 128 N.J. 499, 509 (1992)); see also State v. Reddish, 181 N.J. 553, 592 (2004) (explaining "in order for a defendant to waive the assistance of

4

counsel in a knowing and intelligent way, he also must know in a basic fashion the fundamental legal rights and issues that will be affected by his decision"). The court, obviously familiar with our Supreme Court's requirements, explored in its colloquy with defendant:

> (1)  the nature of the charges, statutory defenses, and possible range of punishment;
>
> (2)  the technical problems associated with self-representation and the risks if the defense is unsuccessful;
>
> (3)  the necessity that defendant comply with the rules of criminal procedure and the rules of evidence;
>
> (4)  the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself;
>
> (5)  the impact that the dual role of counsel and defendant may have;
>
> (6)  the reality that it would be unwise not to accept the assistance of counsel;
>
> (7)  the need for an open-ended discussion so that the defendant may express an understanding in his or her own words;
>
> (8)  the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and
>
> (9)  the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.

5

[State v. DuBois, 189 N.J. 454, 468-69 (2007).]

The trial court made defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta v. California, 422 U.S. 806, 835 (1975) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

The colloquy revealed defendant was an inexperienced self-advocate who was unfamiliar with many of the legal tenets and complexities related to his trial. But when asked by the court, "In light of the penalty that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, is it still your desire to represent yourself and give up your right to be represented by a lawyer?" defendant replied, "What I want to do is defend myself." When asked if he wanted to think about his decision over the weekend, defendant initially replied, "I'm certain today." When asked again, defendant said he would think about it over the weekend but was "almost certain" his decision would not change. The next Monday, defendant reiterated his desire to proceed pro se, whereupon the court delivered its oral decision denying the motion.

From the colloquy with defendant, the court found he "had no prior experience, which certainly would not preclude him from representing himself."

But the court also found defendant had no or an incomplete understanding of the indicted charges, statutory defenses, range of punishment he faced, Rules of Evidence, Rules of Court, how to separate his role as defendant and counsel and protect his right against self-incrimination. The court cited to motions and other documents defendant had filed on his own behalf advancing arguments and requests based on the Uniform Commercial Code, and concluded:

> The defendant's filings, his statements to the [c]ourt throughout this case reflect to me that [he] simply, at this point, doesn't have a sufficient understanding of the case, does not have a sufficient understanding of the defenses, does not have a sufficient understanding of the proofs or how to establish information in this case, does not have a sufficient comprehension of what this case involves and how it can be defended in order to make an appropriate, knowing waiver. . . . I'm not satisfied that he fully understands the nature and consequences of his request and I do find that were I to grant his request for self-representation, it would seriously jeopardize . . . the State's . . . strong interest in ensuring the fairness of judicial proceedings. And, given the conduct and statements which have been made by [defendant] . . . based on what I have observed, were I to grant that request, [it] would create a substantial risk of conviction, regardless of whether . . . defendant was proved to be guilty beyond a reasonable doubt.

The court reiterated its concern about defendant's reliance on the Uniform Commercial Code in a criminal case and stated, "without his understanding of . . . these issues, among others, I don't find that he fully understands the nature

7

and consequences of his request and I find his lack of knowledge in these areas precludes an intelligent waiver of his right to counsel."

We recognize the trial court is "in the best position to evaluate defendant's understanding of what it meant to represent himself and whether defendant's decision to proceed pro se was knowing and intelligent," and review the trial court's determination of whether a defendant "knowingly and intelligently waived his right to counsel" for an abuse of discretion. DuBois, 189 N.J. at 475.

Our Supreme Court, citing to Faretta, 422 U.S. at 814, held, "The corollary to the right of a criminal defendant to be represented by an attorney is the defendant's right to represent himself." King, 210 N.J. at 16. Although the right of self-representation is "not absolute" and "cannot be used to jeopardize the State's equally strong interest in ensuring the fairness of judicial proceedings and the integrity of trial verdicts," id. at 18, the risks associated with defending oneself do not provide a "basis to deny a defendant the right to make that choice," id. at 17. After a trial court engages in the obligatory colloquy with a defendant, "its goal is not to explore a defendant's familiarity with '"technical legal knowledge[,]"' for that is not required. Rather, 'the trial court must question defendant to ascertain whether he actually understands the nature and consequences of his waiver.'" King, 210 N.J. at 19 (alteration in original)

(citation omitted) (quoting <u>Reddish</u>, 181 N.J. at 594, 595). A court should not focus on "whether a pro se defendant will fare well or badly," but it must "ensure that he knows and understands that, by his choice, he may not do well." <u>Reddish</u>, 181 N.J. at 592. Questions on "technical legal knowledge" are "essentially immaterial," and the pertinent determination is whether the defendant "comprehended the risks and consequences of acting as his own attorney." <u>King</u>, 210 N.J. at 20-21.

Defendant's lack of "technical legal knowledge" is similar to that of the defendant in <u>King</u> who was unable to express familiarity with statutory law, penalties he faced, Rules of Evidence, defenses or other legal tenets. Nonetheless, that defendant expressed full understanding of what was "going on," <u>id.</u> at 11, and expressed his desire to represent himself even though that choice "could cause [him] some problem[s]," <u>id.</u> at 14. The trial court's denial here, based on substantially the same reasons as the trial court's denial in <u>King</u>, <u>see id.</u> at 14, deprived defendant of his right of self-representation requiring reversal. "The right [of self-representation] is either respected or denied; its deprivation cannot be harmless." <u>Id.</u> at 22 (alteration in original) (quoting <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 177 n.8 (1984)).

We fully understand the trial court's concern about defendant's unfamiliarity with the law and the risk that he would insert anomalous legal theories into the trial and jeopardize his right to a fair trial and proper verdict. But defendant fully understood his inadequacies. His choice to proceed pro se, despite the pitfalls, was knowing and intelligent. See DuBois, 189 N.J. at 475. Further, the record did not demonstrate that defendant would disregard the court's instruction or be disruptive; and if he acted inappropriately, the court could have taken steps to rectify such behavior.

The denial of defendant's application to proceed pro se requires reversal; as such, we need not fully address defendant's remaining arguments. If defendant is retried, however, we note several issues that may lead to error if not properly warded.

Defendant raised the admission of two hearsay statements during the trial he avers resulted in error. A detective who accompanied the K-9 unit to the abandoned building where defendant was found testified that while en route to the bank, he received

> further radio transmissions . . . stating that the person had fled towards the Avondale neighborhood, which is directly across Sicklerville Road, from the . . . [b]ank. So there was no reason to respond to the bank when there'[re] officers already there. So I responded towards the neighborhood, obviously, because that's –

> makes more sense, in reality. . . . Hewitt Lane is where
> we were told as an update to go and dispatch to Hewitt
> Lane.

In the second hearsay statement, during a recorded statement defendant gave to the police that was twice played to the jury, an unidentified officer summarizing the evidence amassed against him told defendant, "The guy runs out of the bank, runs across Sicklerville Road . . . goes into Avondale. People see him running, they see him run around the corner . . . ."

It is highly prejudicial "to admit an out-of-court declaration by an anonymous witness implicating defendant in the crime for which he stands trial which is not subjected to cross-examination . . . ." State v. Alston, 312 N.J. Super. 102, 114 (App. Div. 1998). Generally, police officers may not testify about information supplied to them by non-testifying witnesses. "When the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." State v. Bankston, 63 N.J. 263, 271 (1973). As the Court later stated in State v. Branch, 182 N.J. 338, 352 (2005), the phrase "'based on information received' may be used by police officers to explain their actions, but only if necessary to rebut a suggestion that they acted

arbitrarily and only if the . . . phrase does not create an inference that the defendant has been implicated in a crime by some unknown person."

Although presented in different modes, the hearsay statements presented by the State traced what the State contended was defendant's path of travel after he left the bank. No evidence other than the detective's recount of the dispatch he received placed the perpetrator crossing Sicklerville Road and entering Avondale, running around the corner. The hearsay evidence linked testimony from one of the State's trial witnesses that he saw a man run across an area where the K-9 unit began to track defendant to the bank robber's route – and eventually to the building where defendant was found.

If admissible under the holdings of Bankston and Branch, hearsay "testimony should be limited in a manner that allows the witnesses to provide appropriate context but not secondhand details about the crime of the defendants." State v. Luna, 193 N.J. 202, 217 (2007). Thus, a witness may testify to taking investigative steps based "upon information received," Bankston, 63 N.J. at 268-69, but "cannot repeat specific details about a crime relayed to [him] by a radio transmission or another person without running afoul of the hearsay rule," Luna, 193 N.J. at 217.

12

Although defendant highlighted only those two instances, we note at least one other. The officer who encountered the State's witness who saw the man running across the area testified that, although he was dispatched to the bank, he changed direction because he was given "the description of the suspect fleeing the area going towards [an address on] Sicklerville Road." The trial court should be vigilant in guarding against improper admission of hearsay statements in violation of the principles of Bankston and Branch.

We also observe that the K-9 officer testified at trial – without being qualified as an expert – about his training and expertise, explained the techniques used to track suspects using dogs, and explained his dog's behavior while tracking defendant.

In State v. Parton, 251 N.J. Super. 230 (App. Div. 1991), adopting Judge Menza's "comprehensive analysis and conclusions on the subject" from State v. Wanczyk,[1] we established the

> universally accepted prerequisites to the admission of testimony regarding dog tracking:
>
> 1. The dog's handler must have sufficient knowledge, skill, training or experience to evaluate the dog's actions.

---

[1] 196 N.J. Super. 397 (Law Div. 1984), rev'd on other grounds, 201 N.J. Super. 258 (App. Div. 1985).

2.  <u>Once qualified as an expert</u>, the handler must give testimony about the particular dog used and that the dog

> a. is of a stock characterized by acute scent and power of discrimination and that this particular dog possessed those qualities;
>
> b. was trained and tested and proved to be reliable in the tracking of human beings;
>
> c. was laid on a trail where circumstances tended to show that the suspect has been, or a track which circumstances indicated was made by the suspect; and
>
> d. followed the scent or track to or towards the suspect's location and that the dog was properly handled during tracking.

3.  After this foundation has been laid, the handler may testify as to what the dog did during the tracking and give his interpretation and opinion of the dog's actions.

[<u>Parton</u>, 251 N.J. Super. at 233-34 (emphasis added).]

Before admitting the K-9 officer's testimony, the trial court must adhere to <u>Parton</u>'s analysis and ascertain if the officer's testimony qualifies for admission as expert testimony. If admitted, the jury should be properly instructed as to the use to which it may put that expert testimony. <u>See</u> <u>Model Jury Charge (Criminal)</u>, "Expert Testimony" (rev. Nov. 10, 2003).

The State never contended defendant took money from the bank thus completing a theft. In charging the jury on robbery, the trial court included that

A-3774-16T3

portion of the instruction explaining that an element of robbery – "in the course of committing a theft" – includes "an attempt to commit the theft." See N.J.S.A. 2C:15-1(a). Despite the Model Jury Charge instruction requiring it to do so,[2] the court never defined "attempt."[3] See State v. Belliard, 415 N.J. Super. 51, 72 (App. Div. 2010). It did not tell the jury that the State was required to prove defendant's conduct during the attempt was purposeful, N.J.S.A. 2C:5-1(a)(3), or that the conduct constitutes a "substantial step" if "it is strongly corroborative of the actor's criminal purpose," N.J.S.A. 2C:5-1(b).

A trial court's "failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel," requiring reversal. State v. Federico, 103 N.J. 169, 176 (1986). "To provide the jury with an accurate 'road map,' the judge was required to specifically charge in accord with the Model Criminal Charge defining attempt." State v. Gonzalez, 318 N.J. Super. 527, 535 (App. Div. 1999). Following

_____

[2] Model Jury Charge (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (rev. Sep. 10, 2012).

[3] A defendant may be found guilty of "attempt" to commit a crime if he "[p]urposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." N.J.S.A. 2C:5-1(a)(3).

Gonzalez, we held the failure to define attempt – "a critical element of robbery" – in connection with the jury instruction for the crime was plain error. State v. Dehart, 430 N.J. Super. 108, 120 (App. Div. 2013). In order to avoid a similar result, the trial court should define attempt in its jury charge.

Lastly, we note the trial court did not merge defendant's conviction for possession of a weapon for an unlawful purpose with robbery. "When the only unlawful purpose in possessing the [weapon] is to use it to commit the substantive offense, merger is required." State v. Diaz, 144 N.J. 628, 636 (1996). In charging the jury on possession of a weapon for an unlawful purpose, the court instructed the jury "the State contends that the defendant's unlawful purpose in possessing the weapon was to intimidate the victim . . . during the course of attempting to commit a theft." In that the only purpose alleged was to commit an element of robbery, possession of a weapon for an unlawful purpose should have merged into that crime.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3774-16T3